[S. F. No. 4896.  In Bank.—April 20, 1908.]

In the Matter of the Estate of JAMES MOFFITT, Deceased.

INHERITANCE TAX—WIFE'S SHARE OF COMMUNITY PROPERTY LIABLE FOR.—The surviving wife's share of the community property of herself and her deceased husband is subject to the payment of the inheritance tax imposed by the act of March 20, 1905, prescribing that "All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same . . . shall be and is subject to a tax hereinafter provided for."

ID.—WIFE TAKES COMMUNITY PROPERTY AS HEIR.—Upon the death of the husband the wife takes one half of the community property as heir.

ID.—CONSTRUCTION OF STATUTES—PRIOR JUDICIAL DECISIONS.—It is a fundamental rule for the interpretation of a statute that it is presumed to have been enacted in the light of such existing judicial decisions as have a direct bearing upon it.

ID.—CONSTITUTIONAL LAW—PROVISIONS AFFECTING COMMUNITY PROPERTY.—Under section 14 of article XI of the state constitution of 1849, and the laws enacted thereunder, the wife has no vested estate in the community property, and the inheritance tax law of 1905, in so far as it imposes a tax on community property acquired under that provision of the state constitution is not in conflict with any provision of the state constitutions of 1849 or 1879, or with any provision of the constitution of the United States.

APPEAL from an order of the Superior Court of Alameda County directing the payment of an inheritance tax.  T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Olney & Olney, and Warren Olney, for Appellants.

Snook & Church, for Respondent.

HENSHAW, J.—This is an appeal by the widow and the executors of the will of the deceased from an order and decree made by the superior court of Alameda County in probate, directing the executors to pay to the county treasurer of Alameda County the sum of $26,684.50 as the inheritance tax upon the interest of the widow in the community property of herself and her deceased husband.  The inheritance tax law

of this state, approved March 20, 1905, prescribes that "All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same . . . shall be and is subject to a tax hereinafter provided for." The single question presented by this appeal is whether the surviving wife's share of the community property is subject to this inheritance tax.

It is conceded that the determination of the trial court that such property is liable for the payment of this tax finds support in the cases of *In re Burdick,* 112 Cal. 387, [44 Pac. 734]; *Spreckels* v. *Spreckels,* 116 Cal. 339, [58 Am. St. Rep. 170, 48 Pac. 228]; and *Sharp* v. *Loupe,* 120 Cal. 89, [52 Pac. 134, 586]. But it is earnestly contended that this court should overrule these cases to the extent of holding that as to the community property the widow has such an ownership or estate or title as enables her to take upon the death of the husband, not as his heir, and not by succession, but by a certain right of survivorship; that, in effect, the wife during the existence of the marriage *status* has always enjoyed an ownership in one half of the community property and that by the death of the husband her ownership of this moiety is simply released from the power of disposition over it with which the law during his lifetime and during the existence of the marriage *status* has clothed him. Reference is made to the language of the Civil Code (sec. 682) which declares that ownership of property by several persons is either: 1. Of joint interest; 2. Of partnership interest; 3. Of interests in common; 4. Community interest of husband and wife. We are referred also to expressions in some of the earlier decisions of this court, such as the language of *Beard* v. *Knox,* 5 Cal. 256, [63 Am. Dec. 125], where it is said: "The husband and wife, during coverture, are jointly seized of the property, with a half interest remaining over to the wife, subject only to the husband's disposal during their joint lives. This is a present, definite and certain interest, which becomes absolute at his death."

All of these code sections, all of these cases, and all of these arguments were most ably urged upon the attention of the court in the first two cases above cited, and the conclusion then reached was there expressed in the following language: "Courts and counsel have occasionally endeavored to find some

property right in the wife, or some respect in which the husband's interest falls short of full property. I think it will be universally admitted that so far there has been a complete failure in this respect. The first attempt shown by our reports of that kind is in *Godey* v. *Godey*, 39 Cal. 157. In that case it is said that while no other technical term so well defines the wife's interest as the phrase 'a mere expectancy . . . it is at the same time, . . . so vested in her that the husband cannot deprive her of it by his will, nor voluntarily alienate it for the mere purpose of divesting her of her claim to it.' "

After painstaking investigation and review, and after the fullest deliberation, this court in *In re Burdick* determined and held, as it declared in *Spreckels* v. *Spreckels,* that upon the death of the husband the wife takes one half of the community property as heir. Every argument here advanced against that conclusion was urged by learned counsel in the other cases, and was fully met in the opinions above referred to. No useful purpose can be subserved by a repetition of these arguments or of the answers to them. A reading of the opinions of this court in those cases will establish how thoroughly the questions were entered into and what a complete disposition was made of them.

It is next urged that as laws imposing inheritance taxes are subject to strict construction, and that as it could not have been in the legislative mind that by this act there was imposed a tax upon the widow's share of the community property, therefore a construction should be sought which will avoid this harsh result. But a familiar and fundamental rule for the interpretation of a legislative statute is that it is presumed to have been enacted in the light of such existing judicial decisions as have a direct bearing upon it. Thus the legislature is presumed to have enacted it with full knowledge that this court in Bank, not once but repeatedly, had declared that the wife did take her share of the community property upon the death of her husband by succession as his heir. The next and necessary presumption which follows is that the legislature enacted the inheritance tax law in the light of these decisions and to the end that the widow's share of the community property should bear this tax quite as much as would the portion of the husband's separate estate which might

come to her by will or by the laws of succession. In other words, since the legislature knew that the latest expression from this court upon the subject was an unequivocal declaration that the widow did take her share of the community property as heir of the husband, if it had designed that the widow's share should not be subject to this tax, it would have made provision that it should be excepted from the operation of the law. If, however, the truth be as counsel urge, that it never entered the minds of the men constituting the legislative body that they were imposing this tax upon the community interest of the wife, it can only be said that for their ignorance they, and not the courts, are responsible, and for their omission they, and not the courts, must find the remedy.

Appellant further shows that the community property here under consideration was acquired under the constitution of 1849 and the laws referable thereto. That constitution, after defining the separate property of the wife, declared (sec. 14, art. XI) : "Laws shall be passed more clearly defining the rights of the wife in relation, as well to her separate property, as to that held in common with her husband." Upon these facts appellant argues that the constitution of 1849, together with the laws passed in conformity with its direction, "conferred upon the wife an equal interest with her husband in the common property," and it is said that while the constitution of 1879 is silent upon the matter of the community property, nevertheless, neither that constitution nor any new laws passed under it can deprive the wife of her interest in the community property guaranteed and secured to her by the constitution of 1849, and the question is asked: "Shall this court do what the legislature cannot do and take from her a vested right?" Appellant's counsel answer this question to their own satisfaction by invoking the aid of section 10 of article I and section 2 of amendment XIV of the constitution of the United States.

It cannot be doubted, indeed it is conceded, that the constitution of 1849, in speaking of property "held in common with her husband" does not refer to tenancies in common as known to the common law, but does mean property of the character now universally designated "community property." Thus, the declaration of the constitution of 1849 above quoted amounts to no more than a mandate to the legislature to

define and prescribe the rights of the wife in the property of the community. The Spanish-Mexican civil law was, of course, the law in force in California at the time of its cession by Mexico to the United States and it was the design of the constitution of 1849 to preserve, so far as might be, to the wives of the inhabitants of the new state (most of whom were at that time former citizens of Spain or Mexico) the rights to the community property which they had enjoyed under the Mexican rule. But even under the Spanish-Mexican civil law the wife had no vested estate in the community property. She had rights which may be loosely described as "vested" in the sense that the person to whom the rights belonged was not doubtful or uncertain but positive and known; in this sense only were her rights vested but those rights never amounted to an estate. She became vested with an estate only (under certain contingencies) upon the dissolution of the marriage or upon the death of the husband; otherwise, as sums up Ballinger, after review of the system, "her interest seems to be a mere expectancy during coverture similar to that under the French system." (Ballinger on Community Property, p. 29.) And, says the supreme court of Louisiana (Boyer's Succession, 36 La. Ann. 506), "The wife has during the marriage no vested proprietary interest in any property composing the community, but only an inchoate right which entitles her to the hope or expectation that if she survives her husband she can receive or own one half of the property that may be left after payment of the community debts." And again says Platt (Property Rights of Married Women; see *Fallbrook Irr. Dist.* v. *Abila,* 106 Cal. 362, [39 Pac. 794]): "The wife has no voice in the management of these affairs, nor has she any vested or tangible interest in the community property. The title to such property vests in the husband, and for all practical purposes he is regarded by law as the sole owner." But passing from the enunciations of these writers, learned in the law on the subject, we may come directly to the declarations and adjudications of our own court under the constitution of 1849 and the laws passed in accordance with its mandate, and we find Chief Justice Field, whose study of this Spanish-Mexican system was as profound as his mastery over it was complete, declaring "the interest of the wife is a mere expectancy like

the interest which an heir may possess in the property of his ancestor." (*Van Maren* v. *Johnson,* 15 Cal. 308.) Soon thereafter Mr. Justice Cope, speaking for the court in *Packard* v. *Arellanes,* 17 Cal. 525, says: "So long as the community exists her interest is a mere expectancy and possesses none of the attributes of an estate either at law or in equity. This was held in *Van Maren* v. *Johnson,* before referred to, where the interest of the wife was compared to that which an heir may possess in the property of his ancestor. This same doctrine prevails in Louisiana and appears to be an established principle of the civil and Spanish law." And again Mr. Justice Thornton, speaking for the court in *Greiner* v. *Greiner,* 58 Cal. 119, says: "The interest of the wife during the same period (coverture) was a mere expectancy, like the interest which an heir may possess in the property of his ancestor."

It is thus apparent that the construction put upon the constitution of 1849 and the laws passed thereunder is identical with that declared in *Estate of Burdick,* 112 Cal. 87, [44 Pac. 734]; and *Spreckels* v. *Spreckels,* 116 Cal. 339, [58 Am. St. Rep. 170, 48 Pac. 228]. The constitution of 1879 does not, as did the constitution of 1849, command the legislature to pass laws defining the wife's rights in the community property because, as for thirty years those laws had been upon the statute books and as the rights under those laws had been from a very early date judicially determined and settled, no need existed in the new constitution to call for legislative action upon the matter.

For these reasons it is impossible to perceive where or how the inheritance law under consideration does violence to any provision of the constitutions of California of 1849 or 1879 or to any provision of the constitution of the United States.

The order and decree appealed from are affirmed.

Shaw, J., Angellotti, J., Sloss J., Lorigan, J., and Beatty, C. J., concurred.

Rehearing denied.