[No. 11430.   Department One.   May 18, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v. ASOTIN COUNTY, *Respondent*.[1]

STATES—ACTIONS—CAPACITY TO SUE—COLLECTION OF HORTICULTUR-AL INSPECTION FUND.  The state can maintain an action against a county to collect the amount assessed against the county for horticultural inspection in the county, which Laws 1911, p. 141, § 3, provides shall be remitted by the county treasurers of the several counties to the state treasurer, in view of Id., § 4, providing that the attorney general is hereby instructed to bring an action against any county in default in its payments; and in view of Const., art. 3, §§ 1 and 21, by which the function of the attorney general is to represent the state in legal matters, and actions in the name of the state are clearly contemplated.

STATUTES—TITLES AND SUBJECTS—SCOPE.  The title "an act relating to salaries and expenses of horticultural inspectors" is sufficiently broad to include subject-matter directing the attorney general to bring actions against counties in default in their payments; as the method of collection is germane and incidental to the general purposes of the act.

AGRICULTURE—INSPECTION—CONSTRUCTION OF STATUTE— "ASSESSED AND LEVIED."  Rem. & Bal. Code, § 3132, having provided that the district board of horticultural inspectors shall each year furnish to the county auditor a statement of the inspection expenses and an estimate for the ensuing year, and § 3133 making it the duty of the county commissioners to levy a "horticultural tax" to meet the estimate, to be levied and collected as other taxes, § 4 of Laws 1911, p. 142, requiring the attorney general to bring an action against any county which had failed to pay to the state treasurer the amount "assessed or levied" against counties by horticultural inspectors for horticultural purposes, must be construed to mean "charged" against the counties, since horticultural inspectors were not empowered to assess or levy the tax.

MANDAMUS—ACTS BY BOARDS—LEVY OF TAX—COUNTIES—FUNDS—LIABILITY—COLLECTION OF HORTICULTURAL INSPECTION TAX.  Under Rem. & Bal. Code, § 3133, making it the duty of county commissioners to levy a "horticultural tax" to meet the estimate for horticultural inspection in the county, to be levied and collected the same as other general taxes, and that the sum so collected shall be paid over to the state treasurer, the remedy of the state against a county

[1]Reported in 140 Pac. 914.

which made no levy or assessment is by mandamus to compel the levy of the tax, and not by action to recover a money judgment for the amount charged to and due from the county; and Laws 1911, p. 142, § 4, authorizing the attorney general to bring an action against any county which failed to pay the amount charged against it, refers to the appropriate remedy, and not to an action for a money judgment.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered July 19, 1913, dismissing an action to recover money paid, upon sustaining a demurrer to the complaint. Reversed.

*The Attorney General* and *R. E. Campbell, Assistant,* for appellant.

*J. C. Applewhite* and *Sturdevant & Bailey,* for respondent.

MAIN, J.—The state of Washington brought this action for the purpose of recovering from Asotin county a sum of money alleged to be due from it and payable into the horticultural fund of the state. The amended complaint, omitting the formal parts, alleged as follows:

"That between the 1st day of July and the 1st day of September, in the years 1909, 1910 and 1911, the horticultural inspector for horticultural district No. 12 certified to the county auditor of Asotin county, as provided in chapter 135 of the session laws of 1909, statements showing the expense of his office with respect to the work done under the provisions of said act in said county during each previous year or part thereof.

"That according to the statement so filed with the auditor of Asotin county, between the 1st day of July, 1909, and the 1st day of September, 1909, there was expended in said county during the months of May, June, July and August of said year for the purpose of carrying out the provisions of said horticultural act, the sum of four hundred fifty-two and 06-100 ($452.06) dollars.

"That according to the statement so filed with the county auditor of Asotin county, between the 1st day of July, 1910 and the 1st day of September, 1910, there was expended in said county during the months of January, February, March, April, May, June, July and August of said year, for the

purpose of carrying out the provisions of said horticultural act in said county the sum of four hundred ninety and 47-100 ($490.47) dollars.

"That according to the statement so filed with the county auditor of Asotin county between the 1st day of July, 1911, and the 1st day of September, 1911, there was expended in said county during the months of January, February, March, April, May, June, July, and August of said year for the purpose of carrying out the provisions of said horticultural act in said county the sum of eight hundred twenty-four and 29-100 ($824.29) dollars.

"That the total amount expended in said county of Asotin during the years of 1909, 1910, and 1911, in carrying out the provisions of said horticultural act in said county, and which has been certified to the county auditor of said county, as heretofore alleged, and as provided in chapter 135 of the session laws of 1909, amounts to one thousand seven hundred sixty-six and 82-100 ($1,766.82) dollars.

"That said amount so expended is now due and payable by said county of Asotin to the state of Washington, to be placed in the horticultural fund of the state, as provided in chapter 43 of the session laws of 1911.

"That said amount or no part thereof has been paid to the state of Washington, or has been paid into the horticultural fund of the state of Washington, or into the district horticultural fund of district No. 12."

To this amended complaint, a demurrer was interposed and sustained. The plaintiff elected to stand upon its amended complaint, and refused to plead further. Judgment was entered dismissing the action, from which the present appeal is prosecuted.

The ultimate question to be determined is, whether the state can maintain such an action as this against the county. The respondent, in support of the correctness of the judgment of the superior court, in its brief, makes the following contentions: First, that the state is not authorized to maintain the action; second, that ch. 43 of the Laws of 1911, p. 141, violates the provision of the constitution which requires that no bill shall embrace more than one subject, and that shall be expressed in its title; third, that the terms "assessed

or levied" as used in ch. 43 of the Laws of 1911 cannot be given effect, and fourth, that the state's appropriate remedy was by mandamus to compel the officers of the county to levy the tax necesary to meet the horticultural inspection expenses in the county.

I. First, then, is the state clothed with power to institute and maintain the present action. At the legislative session for the year 1909, an act was passed entitled, "An Act relating to horticulture and prescribing penalties for the violation thereof and declaring an emergency." Laws of 1909, ch. 135, p. 495 (Rem. & Bal. Code, § 3069 *et seq.*). This act created the office of state commissioner of horticulture, provided for the appointment of a deputy and district inspectors, and defined their respective duties. By § 14 (Id., § 3082), the state is divided into 15 horticultural districts. District 12 is comprised of Whitman and Asotin counties.

Section 63 (Id., § 3132) provides that the district horticultural inspectors shall furnish to the county auditor of each county included in their respective districts a statement showing the expenses of their office with respect to the work done under the provisions of the act in each county.

By section 64 (Id., § 3133) it is made the duty of the board of county comimssioners at the time of making the regular annual tax levy in each year, to include and levy a tax upon the taxable property of the county in such amount as may be necessary on account of the horticultural inspection, this tax to be levied and collected in the same manner as other taxes, and upon its collection the same to be turned over to the state treasurer for the benefit of the "district horticultural fund."

In the year 1911, the legislature passed an act entitled "An act relating to salaries and expenses of horticultural inspectors, making an appropriation therefor, and declaring an emergency." Laws of 1911, ch. 43, p. 141. Section 3 of this act provides that the county treasurers of the several counties shall remit to the state treasurer the amount

assessed against the counties for purposes of horticultural inspection, and shall pay to the state treasurer such amounts as were then due and owing, or should thereafter become due and payable to the state treasurer.

Section 4 provides:

"The attorney general of the state of Washington is hereby instructed to bring an action against any county or counties which have failed to pay the amount assessed or levied against said counties by horticultural inspectors for said horticultural purposes."

Asotin county failed to make the levy as required by the act of 1909. Consequently no remission to the state treasurer from that county was made as required by the act of 1911. The purpose of the present action was to recover a judgment against the county for the amount of the expenses which had been incurred by the district inspectors in that county and which had not been paid into the state treasury.

It is argued that the state cannot maintain this action because the legislature has not authorized it. Section 4 of the act of 1911, above quoted, instructs the attorney general to bring the action. But it is claimed that, since the statute does not specify that it shall be brought in the name of the state, it cannot be so brought. This contention cannot be sustained. By § 1, of art. 3, of the constitution, the attorney general is made one of the executive officers of the state. By § 21 of this article, it is provided that he shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law. The function of this officer is to represent the state in legal matters and proceedings. When the legislature directed him to bring an action against any county or counties for the purpose of collecting moneys which, by § 3 of the act, were made due and payable to the state treasurer, it was certainly contemplated that such action would be instituted in the name of the state, whose representative and counselor the attorney general is.

II.   The title of the act, the sufficiency of which is ques-

tioned, is, "An act relating to salaries and expenses of horticultural inspectors, etc." Section 19, of art. 2, of the state constitution, provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." It is claimed that the title of the act is not sufficiently broad to include that part of the subject-matter thereof which directs the attorney general to bring an action against the county. It is not necessary that the title of an act under this constitutional provision should be a complete index to its provisions. *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *State ex rel. Zenner v. Graham*, 34 Wash. 81, 74 Pac. 1058; *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77 Pac. 845. It is sufficient if it indicates to an inquiring mind the scope and purpose of the law. The title may be general and will include all matters incidental and germane thereto. In *State ex rel. Jones v. Clausen*, 78 Wash. 103, 138 Pac. 653, in construing this provision of the constitution, it was said:

"The constitution does not require that a title shall be an index to the body of the act. It is enough if it indicates to the inquiring mind the scope and purpose of the law. The title may be general and all matters incidental or germane thereto may be written into the body of the law. This has been declared so often by this court and is so familiar that a list of the cases would occupy space that had better be devoted to other uses."

The act, by its title, related to salaries and expenses of horticultural inspection. The method provided by § 4 for recovering these salaries and expenses was a matter which was incidental and germane to the general purposes of the act as expressed in the title.

III. Section 4 of the act of 1911, p. 141, already set out, required the attorney general to bring an action against any county which had failed to pay the amount "assessed or levied against said counties by horticultural inspectors for said horticultural purposes." Inquiry must be directed to the determination of what is meant by "assessed or levied" as used

in this statute. By § 63 of the act of 1909, p. 517 (Rem. & Bal. Code, § 3132), it is made the duty of district horticultural inspectors, between the first day of July and the first day of September, each year, to furnish to the county auditor a statement showing the expenses of their office, together with an estimate of the expense of such work within the county for the ensuing year. By § 64, it was provided:

"It shall be the duty of the board of county commissioners at the time of making the regular annual tax levy in each year to include and levy a tax upon the taxable property of such county in such an amount as they shall find will produce funds sufficient to meet the estimated expense for horticultural purposes for the ensuing year, which tax shall be known as a 'horticultural tax' and which shall be levied and collected the same as other general taxes. . . ." Rem. & Bal. Code, § 3133.

It is apparent, therefore, that, by the act of 1909, the district inspectors were only to furnish a statement showing the expenses incurred and the estimated amount for the ensuing year, and that it then became the duty of the county commissioners to make the tax levy. While the legislature in using the terms "assessed or levied" in the act of 1911 was somewhat improvident in the use of its language, it seems plain that it was not there intended that the district horticultural inspectors should levy the tax. This act was, in effect, a continuation of the act of 1909, and must be read in the light of the provisions of that act. As already stated, it was there provided that the district inspectors should furnish a statement to the counties, and that the county commissioners should levy the tax as in other cases. In the light of these provisions, it is obvious that "assessed or levied" as used in the act of 1911, means nothing more than "charged." Any other construction would defeat the very purpose of the act. The district inspectors having no power to levy a tax, it cannot be presumed that the legislature intended, when providing for the collection from the counties of the amounts which had become due and payable under the act of 1909,

to do a useless thing. An act of the legislature should not be given an interpretation which would make it an absurdity when it is susceptible of a reasonable interpretation which would carry out the manifest intent of the legislature. In Endlich, Interpretation of Statutes, § 264, it is said:

"The presumption against absurdity in the provision of a legislative enactment is probably a more powerful guide to its construction, than even the presumption against unreason, inconvenience, or injustice. The legislature may be supposed to intend all of these; but it can scarcely be supposed to intend its own stultification. Accordingly, it has been said, that, when to follow the words of an enactment would lead to an absurdity as its consequences, that constitutes sufficient authority to the interpreter to depart from them."

IV. Finally, the respondent takes the position that the state's available remedy was an action in mandamus against the county commissioners to compel the levy of the tax, and that it had no right to bring the action against the county in its present form. This argument must be upheld. We think it was not intended by the legislature to make a charge against the general funds of the county. There is nothing in either the act of 1909 or 1911 to indicate it, but there is much suggesting the contrary. Section 64 of the act of 1909, p. 517 (Rem. & Bal. Code, § 3133), already referred to, makes it the duty of the board of county commissioners, at the time of making the regular annual tax levy in each year, to include and levy a tax upon the taxable property of such county to meet the estimated expense for horticultural purposes, which tax shall be levied and collected the same as other general taxes. The act provides that the sum so collected shall be paid over to the state treasurer and used for purposes specially indicated. The primary duty, therefore, the violation of which sustains and justifies the proceeding or action, is a breach of duty on the part of the county commissioners. If the tax had been levied and was in the process of collection, and for any reason its payment had

been delayed by the property owner, a showing of this fact would be a complete defense to an action of this kind. In such an event, the court would, no doubt, hold the tax was not payable out of the general fund, and that the only remedy would be mandamus to compel the treasurer to collect by process. The principle remains the same whether the tax is in process of collection or has never been levied at all. The remedy is to reach the taxpayer and create a special fund, and not to compel the payment out of the general revenues of the county against which the horticultural expense has not been estimated as a possible liability. Nor does it follow, because the attorney general is required to bring an action against any county which fails to pay the amount assessed or levied against such counties by the horticultural inspectors for horticultural purposes, that he can bring an action for a money judgment. The action referred to in the statute is such an action as is made appropriate by statute or by a resort to the common law. The appropriate remedy to compel the performance of a statutory duty by a public officer is mandamus. This suit is between the state and one of its political subdivisions and should be directed by the court in the proper way. Without assembling the cases, it may be said that, under repeated decisions of this court, it is possible to bring in new parties when necessary, and to enter a judgment that will meet the merits of the case. It would serve no useful purpose to dismiss the action and require a new proceeding to be instituted.

The cause will be remanded with leave to bring in the proper county officials as parties to the action, and to amend the complaint so that the duty imposed by the legislature may be required to be performed and the money due the state brought from the source that the legislature intended. The cause will be remanded for further proceedings as indicated.

CROW, C. J., ELLIS, CHADWICK, and GOSE, JJ., concur.