[No. 20620. *En Banc.* March 27, 1928.]

THE CITY OF SEATTLE, *on the Relation of John H. Dunbar, Attorney General, Respondent,* v. O. J. C. DUTTON, *et al., Appellants.*[1]

[1] MUNICIPAL CORPORATIONS (407-1)—TORTS—PERFORMANCE OF GOVERNMENTAL DUTIES—SAFETY OF PLACES—PARKS. A city department of public parks vested with broad powers in caring for and maintaining parks, is not necessarily acting in a governmental capacity, so that it could not render the city liable for the death of an employee of the city accidentally killed by falling from a tree, while engaged in sawing off dead limbs, where such park department is not an entity apart from the city, but merely a department thereof.

[2] MUNICIPAL CORPORATIONS (571)—CLAIMS FOR DAMAGES—SETTLEMENT BY PARK BOARD—LIABILITY OF MEMBERS. The members of a board of city park commissioners, who in good faith compromise and pay a claim for damages for the death of an employee of the board out of the park funds of the board, do not render themselves personally liable to the city (MAIN, MITCHELL and TOLMAN, JJ., dissent).

Appeal from a judgment of the superior court for King county, Truax, J., entered August 18, 1926, upon findings in favor of the plaintiff, in an action for the recovery of money paid by a board of park commissioners in settlement of a claim for damages. Reversed.

*John F. Dore, O. G. C. Beals,* and *F. C. Reagan,* for appellants.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

FULLERTON, J.—In September, 1924, one Joseph Falsetto, then an employee of the department of parks of the city of Seattle, was engaged in sawing off the dead limbs of a tree growing in one of the city's public

[1]Reported in 265 Pac. 729.

parks, and was killed by falling from the tree. His widow in due time presented a claim for damages to the city council of the city, which that body rejected. She then presented a like claim to the board of park commissioners, and that body compromised and settled it with her by paying to her $750 out of the funds of the department of parks. The present action was instituted by the *Attorney General* of the state, on behalf of the city of Seattle, to recover from the then members of the board of park commissioners and their bondsmen the amount so paid. A recovery was allowed in the court below, and the commissioners and the bondsmen appeal.

The case is before us as to its facts on the findings made by the trial court. These are somewhat meager. They show nothing more of the nature and cause of the accident than we have above outlined. No facts are found from which it can be determined whether the death was the result of negligence on the part of the city or some of its officers, or whether it was the result of the carelessness and negligence of the person killed. They are sufficient, however, to support the judgment on the grounds upon which the trial court rested it, if these grounds be legally sound.

[1] The trial court rested the judgment on the ground that there could be no recovery against the city or the department of parks, no matter what may have been the cause of the accident. In other words, it held that the city was not liable, because, in the maintenance of its parks, it exercised a governmental, rather than a proprietary or ministerial, function, and that the department of parks is not liable, because it is an integral part of the city government and partakes of the city's immunity.

If the premise here assumed is sound, the conclusion

drawn therefrom would seem to follow as of course. But we cannot think the premise applicable to all situations. The department of parks of the city of Seattle is a creation of the city charter. While it is made by the charter a separate department of the city government, and while all of its powers are vested in a board of park commissioners, it is not an entity separate and apart from the city, such as it would be were it created as a distinct municipal corporation. (*Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336, 203 Pac. 40.) Nor is it a distinct entity merely because its powers are vested in a body other than the regular city council. It is within the power of the people of a municipality to vest the exercise of the powers of the municipality in as many governing bodies as they see fit. It may vest all of such powers in a single body called a council, or it may vest a part of such powers in such a body and a part in others called by different names. But the power is the same in whomsoever it is vested. Each body, within its own sphere, acts as a part of the city government, not as a distinct entity separate and apart from that government. And it must follow, we think, that if any of such bodies commits acts of negligence within the scope of its authority, which would render the city liable if committed by the more commonly recognized governing body, the city is liable.

It may help to elucidate the proposition if we notice with more minuteness the powers conferred on the board of park commissioners. The third section of the charter provision (Art. XIII) reads as follows:

"The management and control of all the public squares and parks of the city and of all park drives, parkways, boulevards, play or recreation grounds of the city, are hereby vested in the board of park commissioners. It shall have power to designate lands and grounds to be used and appropriated for such pur-

poses; to cause the same to be platted and surveyed and the plats thereof filed in the office of the board of public works, or in the office of the city engineer; to devise, adopt and lay out parks, squares, park drives, parkways and boulevards, play and recreation grounds in and adjacent to the city, and from time to time extend the same and add thereto; to grade, improve, ornament and maintain the same; to erect and maintain buildings, monuments and structures therein, and shall have power of censorship over any statuary, monuments or works of art that may be presented to the city, and shall in the name of the city accept all devises and bequests; to provide for securing, growing and maintaining trees; plants, flowers, zoological collections and other attractions therein; to grant concessions and privileges therein under such restrictions and for such compensation as it shall prescribe, the revenue of which shall go into the city park fund: Provided, That no such concession or privilege shall ever be granted for the sale of any intoxicating liquors in any public park, square, play or recreation ground, park drive, parkway or boulevard of the city. It may exclude from any or all the parks, squares, park drives, parkways and such boulevards as are principally used for pleasure driving, any vehicle or classes of traffic which in its judgment may be improper for or detrimental to the same, or injurious to the improvements therein; it may appoint or cause to be appointed policemen for the special enforcement therein of the park regulations of the city, to be known as park police, and to be paid out of the city park fund.''

By another section the board is given ''exclusive power to employ and pay all such superintendents, employees and other persons as it may deem necessary for maintaining, empowering and controlling all park property,'' and by another section it is provided that the board ''shall alone have authority to expend the park fund.'' The record before us does not disclose the exact extent of the park property of the city, nor does it disclose the precise sum that is collected and

expended for its maintenance, but enough does appear to show that the property is extensive, and that the sum collected and expended upon it amounts annually to a large sum. It is plain, from these provisions of the charter, that the board of park commissioners engage in enterprises which too commonly give rise to personal injuries to the workmen engaged therein, injuries for which the employer may be liable. Were the same work performed under the authority of the city council, the city would be liable for such injuries as were caused by the negligence of the employer, and no good reason exists why it is not so liable when the employer is the board of public works of the city. In the instance before us, it will be observed from the quotation made from the charter that the board named has special authority to care for the trees of the parks. Dead limbs on such trees are a menace to the public who use the parks, and it was not only within the power of the board of park commissioners to cause their removal, but it was their duty to do so. It cannot be said, therefore, that there is no legal liability on the part of the employer for an injury arising out of the prosecution of the work, unless it can be said that, under no circumstances and under no conditions, could such a liability arise. This, for the reasons before stated, we cannot concede.

In support of the conclusion of the trial court, we are cited to our own cases of *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895, *Clark v. Seattle,* 102 Wash. 228, 172 Pac. 1155, and *Nelson v. Spokane,* 104 Wash. 219, 176 Pac. 149. In the first of these cases, it appeared that, by an act of Congress, there was granted to the city of Tacoma a license to occupy and control, for the purposes of a public park "for the use and benefit of the citizens of the United States, and for no other purposes," a certain described

tract of land known as Point Defiance. The charter of the city of Tacoma provided for a board of park commissioners, and made it the duty of the board to take charge of the property and make improvements thereon. While the board was in possession of the park and were improving it for park purposes, an employee of the board, while engaged in work of improvement, was injured by an explosion of dynamite which was stored in a building erected by the park commissioners. It was held that the city was not liable for the injuries caused the workman by the explosion, the decision being rested on the ground that the city was not the owner of the park, and in improving it was exercising a power or franchise conferred upon it for the public good and not for a private corporate advantage, and distinguished the case from somewhat similar cases on that ground. It was said, however, that it was not always easy to draw the line between the functions of a municipal corporation which it exercises in its governmental capacity and those which it exercises in its proprietary capacity. This case, we think, is hardly controlling of the present one, as here the city does own the parks, and it may, to a certain extent at least, use them for its private emolument. It may, to illustrate, erect therein a sub-station to be used in connection with its city lighting plant (*Seattle Land etc. Co. v. Seattle*, 37 Wash. 274, 79 Pac. 780), or a reservoir for the storage of water to be used in connection with its city water plant (*Ferry v. Seattle*, 116 Wash. 648, 200 Pac. 336, 203 Pac. 40), or may grant concessions therein to private individuals (see charter), from each of which the city can derive a revenue.

In the second case, it appeared that there had been constructed in one of the public parks of the city a cement wading pool, into which some one had placed a

broken piece of glass. A child, wading therein, cut her foot on the glass, and an action was brought to recover for the injury. In this court, the city's liability was questioned on the ground that in maintaining the pool it acted in a governmental capacity. This court, however, refused to determine the question. It rested its decision on the ground of want of sufficient facts to justify a recovery, assuming that it would be otherwise liable.

The third of the cases is more to the point, but it will be observed that the court was there careful to state that the park was not operated for profit, carrying the intimation, at least, that if it was so operated, it would not fall within the rule of governmental immunity.

Others of our cases point out the distinction more accurately, showing that the test does not rest altogether on the fact whether or not the enterprise was carried on for gain. In *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, Judge Anders, speaking for the court, used this language:

"In the first place, we are of the opinion that the laying out, repairing and controlling of streets by a chartered municipal corporation does not call forth the exercise of strictly governmental functions. In the performance of such duties, however imposed, the municipality acts primarily for the benefit of the inhabitants of the particular locality. In preserving the peace, caring for the poor, preventing the destruction of property by fire, and preserving the public health, it assumes duties which are said to be in their nature solely governmental (Jones on Negligence of Municipal Corporations, ch. IV), and for the non-exercise, or negligent exercise, of which the corporation is not generally liable to individual citizens. But the duty to keep streets in repair is a municipal or ministerial duty, for a breach of which an action will lie in favor of a party injured thereby. *Denver v. Dunsmore*, 7 Colo. 328 (3 Pac. 705)."

In *Riddoch v. State.* 68 Wash. 329, 123 Pac. 450, Judge Ellis said:

"Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them solely for their own benefit in their corporate capacity, whether performed for gain or not, and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. They have no sovereignty of their own, they are in no sense sovereign *per se*. Their immunity, like their sovereignty, is in a sense borrowed, and the one is commensurate with the other. Such is, in effect, the conclusion reached in *Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332, after a most exhaustive review of the authorities, both American and English. The same principle underlies our own decisions. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Cunningham v. Seattle,* 42 Wash. 134, 84 Pac. 641; *Linne v. Bredes,* 43 Wash. 540, 86 Pac. 858, 117 Am. St. 1068, 6 L. R. A. (N. S.) 707."

In the later case of *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, the same learned judge pointed to a statute, which provides that an action could be maintained against a municipal corporation for any injury to the rights of another arising from some act or omission of such corporation without making a distinction between acts governmental and acts proprietary, and intimated that our decisions were wrong in holding that there was any such distinction. In the course of the opinion, it was said:

"Counsel, however, point out the plain fact that, unless we overrule the *Redfield* case, we perpetuate the incongruity of a rule that a school district is liable for

negligence in the performance of governmental duties, while a municipal corporation proper is not liable in such a case, but is only liable for negligence in the performance of proprietary or corporate duties. Simple candor compels the recognition of this fact. We have followed the rule of the common law (extended, it is true, as to the care of streets)· in cases involving incorporated towns and cities, ignoring the statute, and have applied the statute in its full extent as to school districts and counties. . . . It is useless to multiply citations or to prolong discussion. Clearly we have two lines of decisions, in one of which the statute is either denied or ignored, and in the other of which it is recognized and held .to abrogate the common law rule of immunity.''

In the instant case, it is not necessary to overrule, and we do not overrule, the cases where a distinction is made between liabilities arising from the performance of governmental and proprietary functions of a city or town as to the right to recover in damages therefor, as we conclude the case does not fall within the rule of immunity, even if we give full force and effect to all of our decisions on the question. But we think it plain that the doctrine of non-liability ought not to be extended beyond the true import of the cases.

[2] Since we conclude that the facts presented show an act or omission for which the city could be liable, it remains to inquire whether the board of park commissioners rendered themselves and their bondsmen personally liable by settling the controversy and paying the amount agreed to be paid in such settlement out of the park funds.

Section 29, art. IV of the city charter, provides:

''All claims for damages against the city must be presented to the city council and filed with the clerk within thirty days after the time when such claim for damages accrued, and no ordinance shall be passed allowing any such claim or any part thereof, or appro-

priating money or other property to pay or satisfy the same or any part thereof, until such claim has first been referred to the proper department, nor until such department has made its report to the city council thereon, pursuant to such reference. All such claims for damages must accurately locate and describe the defect that caused the injury, accurately describe the injury, give the residence for one year last past of the claimant, contain the items of damages claimed, and be sworn to by the claimant. No action shall be maintained against the city for any claim for damages until the same has been presented to the city council and sixty days have elapsed after such presentation.''

Section 28, art. IV, provides:

''Neither the city council nor any officer, board, department or authority shall allow, make valid or in any manner recognize any demand against the city which was not at the time of its creation a valid claim against the same, nor shall they or any of them ever allow or authorize to be paid any demand which, without such action, would be invalid, or which shall then be barred by any statutes of limitation, or for which the city was never liable, and any such action shall be void.''

And § 7, art. XXIV, provides:

''Every officer who shall approve, allow or pay any demand on the treasury not authorized by law, ordinance or this charter, shall be liable to the city individually and on his official bond for the amount paid by the city upon such demand in excess of the amount lawfully due from the city thereon.''

It is, perhaps, unnecessary to say that a presentation of a claim to the city council and its rejection by that body do not conclude the controversy over the claim. The controversy still depends. These are but conditions precedent to the right of the claimant to resort to the courts for relief. It is thus within the power of the city council, where the claim is of such a nature as to come within its jurisdiction, to com-

promise and settle the claim, either before or after an action is brought in the courts thereon. There may possibly be a limitation as to time on the right to effect a compromise, but certainly the right exists as long as the right to maintain the action exists. But, as we have shown, the board of park commissioners are, within their own sphere, a coordinate branch of the city government. Their power, with reference to the management and control of the city's parks, is supreme. While the charter provisions quoted would seem to take from them, if read literally, any right or authority over claims for damages arising out of their own acts, yet as to them we think it should be construed generally rather than literally. It is not to be presumed that the city would vest in the board such extensive powers relating to the control of the parks and its funds, and yet take from them any voice in claims of this sort. It must be remembered that all presumptions are in favor of the regularity of their acts. In the absence of a contrary showing, it will be presumed that the claimant had a valid claim against the city; it will be presumed that the settlement was timely made; and it will be presumed, if such advice and consent be necessary, that the settlement was made with the advice and consent of the city council. It must be remembered, furthermore, that there is no charge of bad faith on the part of the board or any of its several members. On the contrary, it is directly conceded that they acted in the utmost good faith. That their action was somewhat irregular may be conceded. But the question before us is solely one of power, and if the power existed, irregularities in its exercise will not usually create a personal liability, and we cannot conclude that they do so in this instance.

The fact that the payment was made from the park funds, is not material. The fund, it is true, is devoted

to the use of the parks, but it is nevertheless the fund of the city. The cause giving rise to the liability arose from the management of the park, and there is no direct, and we think no implied, prohibition against its settlement out of the park funds.

In our opinion, the trial court was in error in holding the individual members of the park board liable, and our order will be that its judgment be reversed, and the cause remanded with instructions to enter a judgment in favor of the defendants, to the effect that the plaintiff take nothing by its action.

PARKER, HOLCOMB, ASKREN, and FRENCH, JJ., concur.

MAIN, J. (dissenting)—I am unable to concur in that part of the majority opinion which holds that the board of park commissioners has power to compromise and pay damage claims, and will briefly state my position.

The department of parks, according to the city charter, is not a separate entity or independent municipal corporation. It is but one of many departments of the city government. *Ferry v. Seattle*, 116 Wash. 648, 200 Pac. 336, 203 Pac. 40. Section 29 of art. 4 of the charter, among other things, provides that

"All claims for damages against the city must be presented to the city council . . ."

It thus appears that the city council is the only authority, under the organic law of the city, which can take cognizance of damage claims. In *Cole v. Seattle*, 64 Wash. 1, 116 Pac. 257, it was said:

"The city council is the only authority which under the organic law of the city, can take cognizance of such [damage] claims."

Article 13 of the charter creates the department of parks. Section 1 of that article specifies the source from which the park funds may be derived. They are

gifts, fines and licenses, rents, appropriation and tax levy which must be "provided by the city council." Sections 3 and 4 of this article define the powers and duties of the board of park commissioners. Nowhere in the delineation of powers is the park board given authority to settle and pay damage claims. In none of the powers given is such power necessarily implied. Section 8, it is true, provides that the park commissioners alone shall have authority to expend the park fund, but this must be read in connection with the powers given to that board. It would appear that, when the drafters of the charter provided, as above stated, that all claims for damages against the city must be presented to the city council, they did not deem it necessary to negative such power in the park board when defining the powers of that board. It cannot be assumed that the claim in the present case was made with the consent or approval of the city council. That body, when the claim was presented to it, rejected it, and this fixed its status with reference to the city council until it should affirmatively appear that that body had changed its position. The mere fact that the board of park commissioners compromised and settled the claim cannot give rise to a presumption that the city council had altered its position with reference thereto. In my opinion the judgment of the trial court was right and should be affirmed.

I therefore dissent.

MITCHELL and TOLMAN, JJ., concur with MAIN, J.