[No. 36625   En Banc.   March 5, 1964.]

DAVID C. KELSO *et al., Appellants,* v. CITY OF TACOMA, *Respondent.**

*Sterbick, Manza, Moceri & Sterbick,* by *Michael S. Manza,* for appellants.

*Brethorst, Fowler, Bateman, Reed & McClure,* for respondent.

*Reported in 390 P. (2d) 2.

*John P. Tracy, Jr., Howard A. Anderson, Theodore R. Fournier,* and *LeRoy C. Kinnie,* amici curiae.

HUNTER, J.—The plaintiff (appellant), Wilhelmina S. Kelso, was injured in an automobile collision with a vehicle owned by the defendant (respondent), City of Tacoma, on August 30, 1961. At the time of the accident the vehicle was being operated on the streets of Tacoma by Officer Fred D. Mulholland, who was on duty and acting within the scope of his employment as a police officer for the City of Tacoma. The plaintiff appeals from a judgment of dismissal entered upon a motion for summary judgment.

The sole question in this case is whether a municipal corporation, a subdivision of the state, retains governmental immunity for the tortious acts of its agents while performing a governmental function in view of RCW 4.92.090 wherein the state consents to be sued for its tortious conduct.

The doctrine of governmental immunity springs from the archaic concept that "The King Can Do No Wrong." We categorically listed reasons in support of the doctrine in *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A.L.R. 1110 (1937):

" . . . (1) The state is sovereign, and the municipality is its governmental agency; since the state may not be sued without its consent, therefore its agent cannot be; (2) the municipality derives no pecuniary benefit from the exercise of public functions; (3) members of municipal departments in the exercise of public governmental duties are agents of the state and not of the city, and hence the doctrine of *respondeat superior* has no application; (4) it is necessary for the proper performance of governmental functions that a municipal corporation should not be liable for the negligence of its agents; (5) municipalities should not be liable for torts committed in the performance of duties imposed by the legislature, but only for those voluntarily assumed under general statutes; and (6) taxes raised for specific governmental purposes should not be permitted to be diverted to the payment of damage claims."

All of these reasons have been subjected to vigorous attacks. Many courts and text writers have branded the doctrine a creator of injustice, asserting that the entire

burden of damage resulting from the wrongful acts of the government has been imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any single individual, and where it properly belongs. The criticism directed toward the doctrine is characterized in *Holytz v. City of Milwaukee,* 17 Wis. (2d) 26, 115 N. W. (2d) 618 (1962):

"There are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental-immunity doctrine. This court and the highest courts of numerous other states have been unusually articulate in castigating the existing rule; text writers and law reviews have joined the chorus of denunciators. Some examples of the condemnation are here presented."

See Abolition of Sovereign Immunity in Washington, 36 Wash. L. Rev. 312 (1961); Leflar & Kantrowitz, Tort Liability of the States, 29 N.Y.U.L. Rev. 1363 (1954).

■ This court has consistently held that the doctrine of governmental immunity is a matter of state policy which can be changed only by the legislature. This established pronouncement was recently stated in *Kilbourn v. Seattle,* 43 Wn. (2d) 373, 261 P. (2d) 407 (1953). We said:

"Appellant strenuously urges that the rule of immunity from liability for negligence by a municipal corporation while engaged in the exercise of a governmental function should be changed, and cites numerous authorities.

"This argument has been considered by this court and rejected. In *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A.L.R. 1110 (1937), we recognized that all of the reasons for such immunity had been subjected to vigorous attack, but said that

" ' . . . the doctrine has become fixed as a matter of public policy, regardless of the reason upon which the rule is made to rest, and . . . any change therein must be sought from the legislature.'

"That opinion was written almost sixteen years ago. A review of cases and legal literature dealing with the governmental immunity defense in the intervening years offers convincing evidence of a growing demand for *legislation* that would require municipal corporations, if not the state itself, to bear the same responsibility for their negligence

as do private corporations; but it is generally recognized, as we indicated in the *Hagerman* case, *supra,* that the rule of governmental immunity has become so firmly fixed as a part of the law of municipal corporations that it is not to be disregarded by the courts until the legislature announces a change in public policy."

The legislature made this announcement of a change in the public policy of Washington by enacting Laws of 1961, chapter 136, § 1 (codified as RCW 4.92.090). It reads as follows:

"The state of Washington, whether acting in its governmental or proprietary capacity, hereby consents to the maintaining of a suit or action against it for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation. The suit or action shall be maintained in the county in which the cause of action arises: *Provided,* That this section shall not affect any special statute relating to procedure for filing notice of claims against the state or any agency, department or officer of the state."

The defendant contends this statute is in derogation of the common law and must be strictly construed; that only the liability of the state has been affected and not its political subdivisions.

■ The common-law right of sovereign immunity is not in the municipality but in the sovereign from which the immunity is derived. In *Hutton v. Martin,* 41 Wn. (2d) 780, 252 P. (2d) 581 (1953), we cited with approval *Seattle ex rel. Dunbar v. Dutton,* 147 Wash. 224, 265 Pac. 729 (1928), and *Riddoch v. State,* 68 Wash. 329, 123 Pac. 450 (1912), as follows:

" 'Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them *solely for their own benefit in their corporate capacity, whether performed for gain or not,* and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they repre-

sent the state. *They have no sovereignty of their own,* they are in no sense sovereign *per se.* Their immunity, like their sovereignty, is in a sense borrowed, and the one is commensurate with the other. Such is, in effect, the conclusion reached in *Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332, after a most exhaustive review of the authorities, both American and English. The same principle underlies our own decisions. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Cunningham v. Seattle,* 42 Wash. 134, 84 Pac. 641; *Linne v. Bredes,* 43 Wash. 540, 86 Pac. 858, 117 Am. St. 1068, 6 L.R.A. (N.S.) 707.' (Italics ours.)"

▋ A familiar and fundamental rule for the interpretation of a statute is that it is presumed to have been enacted in the light of existing judicial decisions that have a direct bearing upon it. *In re Moffitt's Estate,* 153 Cal. 359, 95 Pac. 653, 20 L.R.A. (N.S.) 207 (1908). See *State v. Berry,* 200 Wash. 495, 93 P. (2d) 782 (1939); *In re Big Blue Min. Co.,* 16 F. Supp. 50 (1936); 50 Am. Jur., Statutes § 321. The legislature is presumed to know the theory upon which municipal corporations of the state have been granted immunity under the existing law. If it desired to preserve the doctrine of governmental immunity for these political subdivisions, it should have so stated; and the legislature, not the courts, must find the remedy for their omission.

In 1939, the legislature in the state of New York abrogated the doctrine of governmental immunity by enacting a statute very similar to ours. The New York constitution provides for the establishment of a court of claims to hear claims against the state. New York Const. Art. 6, § 23. The pertinent portion of the New York Court of Claims Act enacted pursuant to that provision reads as follows:

"The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations. . . ." New York Court of Claims Act, § 8.

In *Bernadine v. New York,* 294 N. Y. 361, 62 N. E. (2d) 604, 161 A.L.R. 364 (1945), the court said:

" . . . On the waiver by the State of its own sovereign dispensation, that extension naturally was at an end and thus we were brought all the way round to a point where the civil divisions of the State are answerable equally with individuals and private corporations for wrongs of officers and employees,—*even if no separate statute sanctions that enlarged liability in a given instance.* . . . " (Italics ours.)

In *Holmes v. Erie Cy.,* 42 N. Y. S. (2d) 243, 266 App. Div. 220 (1943), the New York court stated:

" . . . If the immunity of the State is destroyed, as stated in Bloom v. Jewish Board of Guardians, supra [286 N. Y. 349, 36 N. E. 2d 617], there is no basis for holding that the county, as a civil division of the State, is still immune. The sovereign State itself not being immune, there is no immunity to a civil division of the State. When the State waived immunity and assumed liability, the immunity of its civil division, the county, vanished also."

This reasoning is sound and is consistent with our determination of the instant case.

■ The defendant further argues that the 1961 Washington statute, *supra,* specifies that the state merely consents to be sued and this does not create any liability because it is not a clear and unequivocal waiver of governmental immunity. To place such a technical construction on the statutory language does violence to the legislative intent. When a statute is susceptible of a reasonable interpretation, it is our duty to carry out the manifest intent of the legislature. *Martin v. Department of Social Sec.,* 12 Wn. (2d) 329, 121 P. (2d) 394 (1942); *State v. Asotin Cy.,* 79 Wash. 634, 140 Pac. 914 (1914). If there is any room for doubt as to what was intended by the 1961 statute, it has been removed by the amendment of the 1961 statute in the 1963 legislative session. Laws of 1963, chapter 159, § 2 provides:

"The state of Washington, whether acting in its governmental or proprietary capacity, *shall be liable* for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." (Italics ours.)

The legislature has clearly indicated its intention to change the public policy of the state. The doctrine of gov-

ernmental immunity was not preserved to the municipal branches of government. The City of Tacoma was liable for its tortious conduct, if any, at the time of the automobile collision in which the plaintiff was injured.

The summary judgment dismissing the plaintiff's action is reversed, and the cause is remanded for further proceedings. Costs will abide the final determination of the cause.

OTT, C. J., FINLEY, ROSELLINI, HAMILTON, and HALE, JJ., concur.

FINLEY, J. (concurring specially)—In *Macy v. Town of Chelan* (1962), 59 Wn. (2d) 610, 369 P. (2d) 508, I joined the dissent because the views set out therein by Foster, J., were in my judgment most cogent and convincing—in fact, well nigh unanswerable. Thus, in the instant case, agreement with the majority is in order. I have signed it; however, the turn of events here involved requires at least the burning of the above small votive candle, and inspires the highlighting of several considerations which loom large in my evaluation respecting the reasoning and conclusions in the *Macy* dissent, *supra,* and the majority opinion herein.

First of all, in the instant case I do not agree with the position of the dissent that there is some doubt regarding the significance of the action of the legislative branch of state government in enacting (a) Laws of 1961, chapter 136, § 1, RCW 4.92.090, and (b) Laws of 1963, chapter 159. But assuming, arguendo, that there may be some lingering doubt, I would, in what seems to me the cause of more contemporary or perhaps ultimate justice, specifically overrule *Kilbourn v. Seattle* (1953), 43 Wn. (2d) 273, 261 P. (2d) 407, and any other decisions of this court *insofar as they may be controlling or may provide support for the summary judgment* entered in the instant case. This, I think, should find convincing support in the following:

The doctrine of sovereign immunity is in essence a common-law type of product, customized or synthesized by the judicial branch of government. In accepting or assuming, as the case may be, the responsibility for initiating judge-

made rules of law or precedents in the common-law field, the judiciary (in the best common-law tradition) should also accept or assume some responsibility for re-examining such rules of law or precedents in terms of continuing reasonableness or workability. In other words, judge-made rules in the common-law area of Anglo-American jurisprudence, although consistent with the needs and norms, morals and mores, of a given time, do not necessarily remain so. Failure or refusal of the judiciary to re-examine an established common-law solution of a given problem is not justified automatically and completely by a judicial declaration of deference to legislative handling of the problem. It is more than naive to assume the legislative branch will act affirmatively on matters involving governmental immunity from tort liability simply because the judicial branch defers, and refers the problems to the legislature for handling. In common parlance, the best bill gets nowhere in the legislature without considerable organized support.[1] Relative to policy determinations in the common-law field, the judicial branch certainly is as capable of expertise and good judgment as the legislative branch and has equal or possibly even greater responsibilities *pro bono publico*. Furthermore, reconsideration of common-law doctrine on an *ad hoc* basis—which of course is *stare decisis* in the best and most enlightened sense and, historically, is the *modus operandi* of the common law—could be less jarring in effect and, perhaps, could be accomplished with more consistency and finesse than if undertaken by less deliberate and more embracing or inclusive legislative action.

It has been said by some that the doctrine of sovereign immunity was justified in an earlier and pastoral era as a protection for limited governmental revenues; furthermore, that the doctrine soundly served the best interests of the community as a protective shield against unexpected liability and damages for official negligence which might otherwise necessitate budgetary cutbacks of expanding governmental services in certain other desirable areas.

---

[1] See *The Role of the Courts and Legislatures in the Reform of Tort Law* by Cornelius J. Peck, 48 Minn. L. Rev. 265 (December 1963).

Despite the fears of other years, the time seems propitious for reconsideration of the doctrine of governmental immunity and the theoretical bases therefor, not only by the legislative branch (as witnessed in the recent legislation cited above), but also by the judicial branch (as witnessed by the dissent in *Macy* and the majority in the instant case). Among other things, liability insurance of all kinds and varieties, modernly, is available to protect the public treasury and to assure the financial stability and continuity of government services in vital categories. Lastly, it is apparently the practice of numerous units of government today to carry public liability insurance (ostensibly upon the payment of reasonable premiums), possibly anticipating substantial deterioration of the protection heretofore afforded by the doctrine of governmental-immunity.

HILL, J. (dissenting)—The majority says that the legislature has done that which we have said it ought to do,[2] and has eliminated in this state governmental immunity of a city for the tortious acts of its agents while performing a governmental function.

As an individual, I am moved to cheers; it is good riddance. As a member of this court, I am compelled to state my opinion: That the legislature did not do any such a thing. I truly regret that I cannot join with my brethren in their appraisal of what the legislature intended by Laws of 1961, chapter 136, § 1,[3] and Laws of 1963, chapter 159, § 2.[4]

---

[2] *Kilbourn v. Seattle* (1953), 43 Wn. (2d) 373, 261 P. (2d) 407; *Hagerman v. Seattle* (1937), 189 Wash. 694, 66 P. (2d) 1152, 110 A.L.R. 1110.

[3] "The state of Washington, whether acting in its governmental or proprietary capacity, hereby consents to the maintaining of a suit or action against it for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation. The suit or action shall be maintained in the county in which the cause of action arises: *Provided,* That this section shall not affect any special statute relating to procedure for filing notice of claims against the state or any agency, department or officer of the state."

[4] "The state of Washington, whether acting in its governmental or proprietary capacity, ((hereby consents to the maintaining of a suit or action against it)) *shall be liable* for damages arising out of its tortious

The language of these statutes, as set forth in the footnotes, is no more than a waiver by the state of its right to assert the defense of governmental immunity in an action against the state, and it is no more than wishful thinking to say that the legislature thereby intended to waive, for the City of Tacoma or any other city, its right to that defense.

The majority says that the words "state of Washington," in the statutes quoted in the footnotes, mean all the cities in the state of Washington too. And then it says:

" . . . If it [the legislature] desired to preserve the doctrine of governmental immunity for these political subdivisions, it should have so stated; and the legislature, not the courts, must find the remedy for their omission."

It seems to me that the logic is all the other way and that we could more aptly say:

"If it [the legislature] desired to eliminate the doctrine of governmental immunity for these political subdivisions, it should have so stated; and the legislature, not the courts, must find the remedy for their omission."

Most significant to me is the fact that the quoted 1963 section relied upon (footnote 4), amending the 1961 act (footnote 3), is part of a 12-section act dealing with the handling and payment of tort claims against the state and its agencies, describing the duties of the attorney general and the budget director, et al. These, by no stretch of the imagination, have any application to cities, unless any action against a city for a tort is by this legislation converted into an action against the state on the theory of respondeat superior.

Much as I would like to see the legislature make the cities (and all governmental subdivisions) liable for the torts of

conduct to the same extent as if it were a private person or corporation. ((The suit or action shall be maintained in the county in which the cause of action arises: PROVIDED, That this section shall not affect any special statute relating to procedure for filing notice of claims against the state or any agency, department or officer of the state.))" The material enclosed in double parenthesis was lined through in the original to indicate that such material was stricken from the existing law.

their agents while exercising governmental functions, I do not believe the legislature has done so and, therefore, I dissent.

DONWORTH, J., and DAWSON, J. Pro Tem., concur with HILL, J.