**WARDELL, Internal Revenue Collector, v. BLUM et al.**

(Circuit Court of Appeals, Ninth Circuit.    October 24, 1921.)

No. 3670.

1. **Internal revenue ⬥⇒8—Inheritance tax only on property of deceased.**
   All inheritance taxes are imposed on the transfer of the net estate of the deceased, and the property upon which such a tax is imposed must, in truth, be the property of the deceased, under 39 Stat. 777, §§ 201–203.

2. **Internal revenue ⬥⇒8—Interest subject to inheritance tax determined by law of state where property is situated.**
   The interest of a decedent subject to inheritance tax under 39 Stat. 777, §§ 201–203, providing that the tax be upon the transfer of the net estate of the decedent "to the extent of the interest therein of the decedent," etc., is to be determined by the law of the state where the property is situated.

3. **Internal revenue ⬥⇒8—Only one-half of community property in California subject to inheritance tax.**
   Only one-half of community property is subject to federal inheritance tax under 39 Stat. 777, §§ 201–203, in view of Civ. Code Cal. § 1402, and St. Cal. 1917, p. 880.

Hunt, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Action at law by James B. Blum and another, as executors of the last will and testament of Rosa Blum, deceased, against Justus S. Wardell, as Collector of Internal Revenue for the First District of California. From a judgment overruling demurrer to complaint (270 Fed. 309), defendant brings error. Affirmed.

Frank M. Silva, U. S. Atty., and E. M. Leonard, Asst. U. S. Atty., both of San Francisco, Cal. (Carl A. Mapes, Solicitor of Internal Revenue, of Washington, D. C., and H. Maurice Darling, Special Atty., of Washington, D. C., Bureau of Internal Revenue, of counsel), for plaintiff in error.

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John C. Altman and Richard S. Goldman, both of San Francisco, Cal. (Thos. P. Boyd, of San Rafael, Cal., John W. Preston, of San Francisco, Cal., and H. W. B. Taylor, of San Anselmo, Cal., of counsel), for defendants in error.

A. L. Weil, Forrest A. Cobb, and Perry Evans, all of San Francisco, Cal., and Lloyd M. Robbins, Luther Elkins, and Carey Van Fleet, all of San Francisco, Cal., amici curiæ.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This suit was brought for the recovery of an estate tax paid to the government under protest on the half interest of the wife of the decedent Blum in the community property which passed to her under the laws of the state of California upon the death of her husband.

[1] All inheritance taxes are imposed on the transfer of the net estate of the "deceased"; from which the conclusion is inevitable that the property upon which such a tax is imposed must, in truth, be the property of the deceased. In the case entitled In re Moffitt's Estate, 153 Cal. 359, 95 Pac. 653, 1025, 20 L. R. A. (N. S.) 207, the Supreme Court of that state held that the share of the surviving wife in the community property was subject to the inheritance tax imposed by the statute of the state, citing a number of its previous decisions to the effect that upon the death of her husband the wife took one-half of the community property only as "heir" of her husband, and reaffirming the correctness of that holding. If she took only as heir, as a matter of course, the whole of the community property belonged to the husband at the time of his death, and was accordingly liable to the inheritance tax imposed by the then state statute.

But in 1917 (Stat. 1917, p. 880) the Legislature of California so changed its inheritance tax law as to expressly declare that for the purposes of the act the half of the community property which goes to the widow on the death of the husband shall "not" be deemed to pass to her as "heir" of her husband, but shall go to her as for a valuable and adequate consideration, and shall not be subject to the inheritance law of the state.

That manifestly is a clear statutory declaration that the wife's half of the community property is not part of the property of the deceased husband, at least so far as the state inheritance taxes are concerned.

[2] The statute of the United States imposes an inheritance tax upon the transfer of the net estate of every decedent "to the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." Sections 201–203, 39 Stat. 777.

How is that interest to be determined?

[3] Manifestly, we think, by the law of the state where the property is situate. In the present instance the law of that state is declared by the statute enacted in 1917, providing that so far as state inheritance taxes are concerned, the wife of a decedent acquires upon his death

one-half of the community property in her own right, and not as heir of her husband; in effect, therefore, that in so far as state inheritance taxes are concerned, the estate of a decedent has no interest of any sort in the wife's half of the community property. That, in our opinion, settles the question here presented against the contention of the government; for we not only see nothing in the above-quoted provision of the United States statute to indicate any intention to impose a federal inheritance tax upon the wife's half of community property which the statute of the state where the property is situate expressly declares passes to the wife upon the death of her husband in her own right and not as his heir, but the federal statute, as will be seen, expressly declares as one of the essential conditions to the imposition of a federal inheritance tax that the net estate of the decedent shall be "subject to distribution as part of *his* estate."

It must not be forgotten that the sole question here is one of federal inheritance tax and, even if the case was not controlled by the California statute of 1917 above referred to, applying to it the rule of law announced by the Supreme Court of the United States in the case of Arnett v. Reade, 220 U. S. 311, 320, 31 Sup. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, the result, it seems to us, must be the same. That court there said:

"It is very plain that the wife has a greater interest than the mere possibility of an expectant heir."

Under that rule, one half of the community property would go to the surviving wife, the other half being subject to the testamentary disposition of the husband by virtue of section 1402 of the Civil Code of California, which declares, among other things:

"Upon the death of the husband, one half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition, goes to his descendants."

The judgment is affirmed.

HUNT, Circuit Judge (dissenting). U. S. Stat. L. vol. 39, p. 777, §§ 201, 202, and 203, provide:

"That a tax * * * is * * * imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States. * * *

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate."

"Sec. 203. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses * * * support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate as are allowed by the laws

of the jurisdiction, whether within or without the United States, under which the estate is being administered."

Turning to the Civil Code of California, the following sections are pertinent:

"Sec. 172. The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate." (Enacted March 21, 1872.)

In statutes of California 1901, p. 598, an amended section 172 was made to read as follows:

"Sec. 172. The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto; and provided also, that no sale, conveyance or incumbrance of the furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property shall be made without the written consent of the wife."

In 1917, chapter 583, Civil Code of California 1917, the following law was passed:

"The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, or sell, convey, or incumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife."

Again, in 1917, chapter 583, Statutes of 1917, California Civil Code, the Legislature added a new section (172a), which provided with respect to the management and control of community real property:

"The husband has the management and control of the community real property but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or incumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or incumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate."

The statute for distribution of common property on the death of the husband, section 1402, Civil Code of California, provides:

"Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition, goes to his descendants, * * * and in the absence of both such disposition and such descendants, is subject to distribution in the same manner as the separate property of the husband. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration."

The California inheritance tax laws, page 880, Statutes of 1917, provide as follows:

"The words 'estate' and 'property' as used in this act shall be taken to mean the real and personal property or interests therein of the testator, intestate * * * passing or transferred to individual legatees, devisees, heir, next of kin, * * * or successors, and shall include all personal property within or without the state; provided, that for the purpose of this act one-half of the community property which goes to the surviving wife on the death of the husband, under the provisions of section 1402 of the Civil Code, shall not be deemed to pass to her as heir to her husband, but shall, for the purpose of this act, be deemed to go, pass, or be transferred to her for valuable and adequate consideration and her said one-half of the community shall not be subject to the provisions of this act; provided, further, that in case of a transfer of community property from the husband to the wife, within the meaning of subdivisions (3) or (5) of section 2 of this act, one-half of the community property to transferred shall not be subject to the provisions of this act; and provided, further, that the presumption that property acquired by either husband or wife after marriage is community property, shall not obtain for the purpose of this act as against any claim by the state for the tax hereby imposed; but the burden of proving such property to be community property shall rest upon the person claiming the same to be community property."

The Supreme Court of the United States, in Moffitt v. Kelly, 218 U. S. 400, 31 Sup. Ct. 79, 54 L. Ed. 1086, 30 L. R. A. (N. S.) 1179, held that the nature and character of the right of the wife in the community for the purpose of taxation is "peculiarly a local question," to review which the Supreme Court had no power. That all question as to the rule of decision in California prior to 1917 has been determined is entirely clear. In Spreckels v. Spreckels, 172 Cal. 775, 158 Pac. 537, the decisions are collated and referred to and with evident appreciation of the importance of the question the court, in a concise and able opinion by Justice Shaw, held that—

Prior to an additional proviso in 1891 "it was the established doctrine in this state that during the marriage the husband was the sole and exclusive owner of all of the community property, and that the wife had no title thereto, nor interest or estate therein, other than a mere expectancy as heir, if she survived him."

And furthermore, the limitation which the statutes put upon the husband's testamentary power was not understood "to vest in the wife during the marriage any interest or estate whatever in the community property, but merely to constitute a restriction upon the husband's power." The court also held that if the husband undertook to dispose of all the community property by will, giving the wife less than one-half thereof, such disposition was not absolutely void, but had the effect of putting her to her election whether to take under the statute or under the will, and that the testamentary disposition in such a case was voidable, though not absolutely void. The statute of 1891 was commented upon by the court, and two cases, Fulkerson v. Stiles, 156 Cal. 704, 105 Pac. 966, 26 L. R. A. (N. S.) 181, and Fanning v. Green, 156 Cal. 281, 104 Pac. 308, were cited in support of the doctrine that the wife has no interest or estate in community property during the marriage relation, and that the husband is the absolute owner thereof subject to the limitation upon his power of disposition.

Again, referring to the legislation of 1891, the court said:

"Neither does the proviso purport to vest in the wife, during the marriage, any present interest or estate in the community property given away by the husband without her written consent. In view of the long-settled doctrine that the entire estate therein [in the community property] is in the husband during the marriage relation, a doctrine that had become a fixed and well-understood rule of property, it is not to be supposed that the Legislature would have made a change of so radical a character without plain language to that effect."

Schneider v. Schneider (1920) 191 Pac. 533, is not a recession by the court from the directly expressed earlier views.

But the more important point is whether by the state legislation of 1917 (heretofore referred to) the rule as theretofore announced by the decisions cited has been modified. In Moffitt's Estate, 153 Cal. 359, 95 Pac. 653, 1025, 20 L. R. A. (N. S.) 207, decided in 1908, the court passed upon an appeal by the widow and executors of the will of a deceased husband from a decree directing payment to the county treasurer of Alameda county, an inheritance tax upon the interest of the widow in the community property of herself and her deceased husband. The 1905 inheritance tax statute of California prescribed that all property which passed by will or intestate laws of the state from any person who died seized or possessed of the same should be subject to a tax provided for in the act. Confining its decision to the question whether the surviving wife's share in the community property was subject to the inheritance tax, the court, after holding that it was to be presumed that the Legislature enacted the law imposing inheritance taxes with full knowledge that it had been repeatedly held by the Supreme Court that the wife took her share of the community property upon the death of her husband by succession as his heir, decided that the widow's share of the community property should bear the inheritance tax as would the portion of the husband's separate estate which might come to her by will or by the laws of succession. The court said:

"In other words, since the Legislature knew that the latest expression from this court upon the subject was an unequivocal declaration that the widow did take her share of the community property as heir of the husband, if it had designed that the widow's share should not be subject to this tax, it would have made provision that it should be excepted from the operation of the law."

Presumably with knowledge of that and other decisions the Legislature, by the statute of May 23, 1917, exempted the interest which the wife has received upon the death of her husband. That is very clear; and I think the language of the proviso was employed with special care to limit the amendment to the purpose of the act, which pertained solely to inheritance taxes and the levy and collection thereof. The title of the statute and the only subject-matter thereof relate to inheritance taxes, to the property interest upon which they can be levied, and to their collection and to gifts. Chapter 589, Statutes of California, 1917, p. 880.

As I read the statute, in exempting the interest taken by the wife upon the death of the husband it was assumed that she took as an heir, and that not till the death of the husband could the interest "go, pass or

be transferred to her." There is no language which shows an intent on the part of the Legislature to establish any more extended right in personal property than such as the law as declared by the Supreme Court of the state recognized she is entitled to. Certainly there is no direct expression changing the law defining her interest, and I fail to find ground for the inference which the defendants in error ask to be drawn. Therefore I feel constrained to adopt the view recognized in Spreckels v. Spreckels, supra, that if the Legislature had intended to disturb the long-settled doctrine that the entire estate in the community is in the husband during the marriage relation, it was not to be supposed that such a radical change would have been made "without plain language to that effect." Section 172a, also adopted in 1917, and hereinbefore cited, provides that the wife must join in executing any instrument by which the community real property or any interest therein is leased or conveyed or incumbered for a longer period than one year, provided the sole lease or conveyance of the husband holding record title to community realty, made to a person without knowledge of the marriage relation, shall be presumed to be valid, but no action to avoid such instrument shall be commenced after one year from filing of record the instrument.

Inasmuch as the case does not call for decision as to the right of the wife in real estate, I pass the question merely expressing doubt whether section 172a has enlarged the interest of the wife in the realty as such interest was defined by the cited decisions of the Supreme Court. But as to personalty I believe that the reasonable presumption is that the Legislature of 1917, in repeating the law which had been in force, meant to make no change in respect to the relation it bears to the community.

The case of Arnett v. Reade, 220 U. S. 311, 31 Sup. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, is cited by defendants in error to sustain the argument that since 1917 the federal courts must follow the construction which the Supreme Court has put upon statutes similar to those of California. If I could consistently reach the point where I could agree that the amendments of 1917 effected a change in the nature of the interest of the wife in personalty, the position taken would be strong. But the question involved in Arnett v. Reade, supra, arose in the territory of New Mexico and turned upon the true construction of a statute of the territory passed in 1901 providing that—

"Neither husband nor wife shall convey, mortgage, incumber or dispose of any real interest or legal or equitable interest therein acquired during coverture by onerous title unless both join in the execution thereof." Laws N. M. 1901, c. 62, § 6.

In Reade v. Lea, 14 N. M. 442, 95 Pac. 131, the Supreme Court of the territory held that that statute did not apply to community real property acquired before its passage because the husband was the absolute owner of such property and would be deprived of vested rights if the statute were construed as applicable to property acquired before its passage. This view was reversed by the Supreme Court of the United States upon the ground that the position taken by the territorial court was in conflict with the old law of New Mexico, which in

effect was that, after payment of the common debts, the deduction of the survivor's separate property and his half of the acquest property and subject to the payment of the debts of the decedent the remainder of the acquest property and the separate estate of the decedent shall constitute the body of the estate for descent and distribution. It was accordingly held that prior to the passage of the statute of 1901 the wife had a greater interest than a mere possibility, and that the statute did not change the estate which the husband had prior to the passage of the statute. The case is to be distinguished, in that in California prior to the enactment of 172a the husband had absolute ownership of the community. In Spreckels v. Spreckels, 116 Cal. 343, 48 Pac. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170, it was distinctly held that the statute requiring the consent of the wife to gifts of community property did not apply to property acquired prior to the passage of the statute of 1891, for such a construction, if adopted, would deprive a husband of his vested property rights in the community.

Warburton v. White, 176 U. S. 484, 20 Sup. Ct. 404, 44 L. Ed. 555, also cited, is authority for invoking the principle that the federal courts should abide by the judicial construction put upon statutes relating to community property as expounded by the highest tribunal of the state; and although, in the course of the opinion by Chief Justice White, it is said, perhaps in a general way, that it is a misconception of the community system to suppose that because power was vested in the husband to dispose of the community acquired during marriage as if it were his own, therefore by law the community property belongs solely to the husband, nevertheless the Supreme Court adhered to the principle that the decisions of the Supreme Court of Washington would be followed.

In Badover v. Guaranty Trust & Savings Bank (Cal.) 200 Pac. 638, August, 1921, decided since the present case was submitted, the Supreme Court, speaking through Chief Justice Angellotti, again cited the earlier cases and reaffirmed the "well-settled doctrine" in California "with relation to the status of community property," and held that the wife during the marriage has no existing property right in the community property. "She may enforce certain limitations established by statute on the husband's control thereof, but this gives her no present interest in the property," or, as put in Estate of Burdick, 112 Cal. 387, 393, 44 Pac. 734, "no right or title of any kind in any specific property." That case was commenced in 1917, hence the decision is not upon the effect of the amendments of 1917, but it is the last authoritative word in recognition of the generally established rule of property in California, a rule which it seems to me has not been set aside by the amendments of 1917 to the inheritance tax law and section 172 of the California Code.