## COMMISSIONER OF INTERNAL REVENUE v. CADWALLADER.

### No. 9863.

Circuit Court of Appeals, Ninth Circuit.

April 30, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Helen R. Carloss, Carlton Fox, and Hubert L. Will, Sp. Assts. to the Atty. Gen., for petitioner.

Clark J. Milliron, of Los Angeles, Cal., for respondent.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

While domiciled in the Philippine Islands, Brooke W. Cadwallader and his wife acquired certain personal property. The husband and wife were citizens of the United States. Cadwallader died in the Philippines in 1936; and the question pre-

sented is whether, for federal estate tax purposes, his gross estate includes the whole or only one-half of the property so acquired. The Commissioner assessed the entire value, but on petition for redetermination the Board of Tax Appeals held that only one-half the value was taxable.

So far as pertinent, Section 302(a) of the Revenue Act of 1926, as amended, provides that the gross estate of a decedent shall include the value at the time of his death of all property "to the extent of the interest therein of the decedent at the time of his death," 26 U.S.C.A. Int.Rev. Acts, page 227. The law of the Philippines is concededly determinative of the extent of this decedent's interest. Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319. Cf. Poe v. Seaborn, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239; Black v. Commissioner, 9 Cir., 114 F.2d 355.

In the Philippines the marital community is called the "conjugal partnership." The code provisions defining the status of the spouses and their rights in property acquired during coverture are similar to those of the community property states. Some of these provisions are quoted on the margin.[1] The Supreme Court of the Islands has characterized the wife's interest in the conjugal property as "vested" and "equal to" that of the husband, Gibbs v. Government (1933), 59 Phil. 293. It was there held that the wife's interest, passing upon her death to her husband, was subject to an inheritance tax. The court said (59 Phil. at pages 301, 302) that

---

[1] The following are from the Civil Code in force in Cuba, Puerto Rico, and the Philippines:

Art. 1401. To the conjugal partnership belong:

1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

2. That obtained by the industry, salaries, or work of the spouses or of either of them.

3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses.

Art. 1407. All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife.

Art. 1412. The husband is the administrator of the conjugal partnership, with the exception of what is prescribed in article 59.

Art. 1413. Besides the powers the husband has as administrator, he may alienate and encumber for a valuable consideration the property of the conjugal partnership without the consent of the wife.

Nevertheless, every alienation or agreement which the husband may make with regard to said property in contravention of this code or in fraud of the wife shall not prejudice her nor her heirs.

Art. 1414. The husband may dispose by will of his half only of the property of the conjugal partnership.

Art. 63. The wife, without permission of her husband, may—

1. Execute a will.

* * *

Art. 1426. The net remainder of the partnership property [after dissolution] shall be divided, share and share alike, between the husband and wife, or their respective heirs.

Art. 657. The rights to the succession of a person are transmitted from the moment of his death.

The following is from the Philippine Code of Civil Procedure:

Sec. 685. When the marriage is dissolved by the death of the husband or wife, the community property shall be inventoried, administered, and liquidated, and the debts thereof shall be paid, in the testamentary or intestate proceedings of the deceased spouse, in accordance with the provisions of this Code relative to the administration and liquidation of the estates of deceased persons, or in an ordinary liquidation and partition proceeding, unless the parties, being all of age and legally capacitated, avail themselves of the right granted to them in this Code of proceeding to an extrajudicial partition and liquidation of said property.

In case it is necessary to sell any portion of said community property in order to pay the outstanding debts and obligations of the same, such sale shall be made in the manner and with the formalities established by this Code for the sale of the property of deceased persons. Any sale, transfer, alienation or disposition of said property effected without said formalities shall be null and void, except as regards the portion that belonged to the vendor at the time the liquidation and partition was made.

All acts and other provisions of law inconsistent herewith are hereby repealed.

(Act 3176 amending the Code of Civil Procedure of the Philippine Islands. Approved Nov. 24, 1924.)

"under the provisions of the Civil Code and the jurisprudence prevailing here, the wife, upon the acquisition of any conjugal property, becomes immediately vested with an interest and title therein equal to that of her husband, subject to the power of management and disposition which the law vests in the husband. Immediately upon her death, if there are no obligations of the decedent, as is true in the present case, her share in the conjugal property is transmitted to her heirs by succession." In the course of the opinion the court quoted Articles 1407, 1414, and 1426, shown in the above note, and referred to Article 657, which we have also set out there.

It is urged by the Commissioner that this decision is not presently the law of the Philippine Islands. He claims that the holding is inconsistent with previous expressions of the court in several cases, and with a subsequent expression in the case of Oñas v. Javillo, 59 Phil. 733. We are not able to agree with the Commissioner, as we think the Gibbs case must be taken as controlling.

One of the previous cases is Nable Jose v. Nable Jose, 41 Phil. 713. There the court held that upon the death of the wife the husband, by virtue of his power to liquidate (settle the affairs of) the conjugal estate, could sell or mortgage the property without authority of court. In the course of the opinion it was observed that "prior to the liquidation, the interest of the wife, and in case of her death, of her heirs, is an interest inchoate, a mere expectancy, which constitutes neither a legal nor an equitable estate, and does not ripen into title until it appears that there are assets in the community as a result of the liquidation and settlement." In the similar situation involved in Manuel and Laxamana v. Losano, 41 Phil. 855, similar language is used; but in both of those cases the court was dealing with the rights of the wife or her heirs in respect of specific conjugal property, it being thought that they had an interest only in the net remainder of the property after liquidation and payment of the debts of the marital community. It is plain from these decisions that, regardless of the language used in characterizing the wife's interest, the husband was not thought to have any interest whatever in her share of the property acquired by the community. He has only the power of management and disposition; and this power extends beyond the wife's death for the purpose of winding up the affairs of the conjugal partnership. In this respect the powers of the husband seem comparable with those of a surviving partner at the common law.

The language of the Nable Jose case was again quoted in Madrigal and Paterno v. Rafferty and Concepcion, 38 Phil. 414, where it was held that the husband must pay the federal income tax on all the income of the conjugal partnership. That case, however, was decided in advance of the holding of the United States Supreme Court in Poe v. Seaborn, supra, and upon the ground that since the wife "has no estate and income, actually and legally vested in her and entirely distinct from her husband's property, the income cannot properly be considered the separate income of the wife for the purposes of additional tax", 38 Phil. at page 420. The court remarked that the wife "has an interest in the ultimate property rights and in the ultimate ownership of property acquired as income after such income has become capital."

The subsequent case relied upon by the Commissioner, Oñas v. Javillo, supra, was decided about three months after Gibbs v. Government, supra. The latter decision was not mentioned. In the opinion the court quoted the above excerpt from the Nable Jose case to the effect that the wife has a "mere expectancy" prior to liquidation, but the court decided that the heirs of the wife could maintain an action for partition of community real estate after the death of the wife, notwithstanding there had been no liquidation. This decision, instead of supporting the view of the Commissioner, is direct authority for the proposition that the wife has an interest in the conjugal property which upon her death passes to her heirs subject to administration.

■ We are in accord with the view of the Board of Tax Appeals, namely, that the clear-cut holding of the Gibbs case should be followed. In the light of that decision and the quoted statutory provisions, we think the interest of the wife in community property in the Philippine Islands does not differ substantially from the present interest a wife has under the laws of the community property states generally; and that for the purpose of the federal

estate tax the husband must be held to have no interest in the wife's share of the conjugal estate.

Affirmed.

HANEY, Circuit Judge (dissenting).

The fact that the residents of 39 states, amounting to 83.8% of the population of the United States, must bear a substantial part of the just tax burden of the residents of 9 states amounting to only 16.2% of such population, because of a special privilege enjoyed by the residents of such 9 states, is sufficient to warrant close scrutiny of any request for extension and perpetuation of such special privilege. The cost to the many of the special privilege for the few is between $200,000,000 and over a billion—a stupendous gift. Black v. Commissioner, 9 Cir., 114 F.2d 355, 360. Another reason why this court should be especially searching in its decision is that 5 of the 9 favored states are included in this circuit which includes only two other states, exclusive of the territories of Alaska and Hawaii.

The special privilege arises from the fact that even though a husband earns and is paid a salary, the wife may return one-half of such salary as *her* income. By this device, the tax is lessened because on a lesser amount of income the tax rate is smaller. The division of the income between the spouses is said to be proper because under the community property law of the favored states, one spouse is considered as owning one-half the earnings of the other spouse.

McKay explains "community" by stating that the word implies an association of persons. He also states that the "marital community is a group of persons consisting of husband and wife" and that "community property is simply the property that belongs to this group". McKay, Community Property, 2nd Ed., 3, § 4.

There are a number of theories as to the origin of the system of community property. McKay, supra, 4, § 7. So far as Spain is concerned, it is thought that the community property system was established there between A.D. 653 to A.D. 672 by the conquering Goths. McKay, supra, 7, § 9. The relation between husband and wife created under the law of community is sometimes spoken of as a conjugal partnership. McKay, supra, 121, § 160.

The Philippine Islands, discovered by Magellan in 1521, thereafter, by subjugation, were ruled by Spain until the purchase thereof by the United States for $20,000,000, pursuant to the treaty with Spain signed at Paris on December 10, 1898. 21 The Americana, 752, 753. The Act of March 2, 1901, Ch. 803, 31 Stat. 910 provided that all military, civil and judicial powers, necessary to govern the islands, were vested in such person and persons, and were to be exercised in such manner as the President should direct, until Congress should otherwise provide. Apparently, an executive order established by implication the community property law, if not the treaty or international law (Vilas v. Manila, 220 U.S. 345, 357, 359, 31 S.Ct. 416, 55 L.Ed. 491) and that law was, continued in force by the Act of August 29, 1916, Ch. 416, § 6, 39 Stat. 547.

The Revenue Act of 1918, 40 Stat. 1062, § 211(a), levied an income tax "upon the net income of every individual". The Revenue Act of 1916, 39 Stat. 777, §§ 201, 202, levied an estate tax "upon the transfer of the net estate of every decedent" and provided that the value of the gross estate should include the value of all property to the "extent of the interest therein of the decedent at the time of his death". These provisions were not changed by the Revenue Act of 1918. Regulation 45 relating to income taxes, and promulgated under the 1918 act contained no provision regarding the manner in which community income was to be reported. Art. XV, Reg. 37, relating to estate taxes, and promulgated under the 1916 act, provided that only one-half of community property should be included in the gross estate of a deceased spouse, except where the surviving spouse's interest was equivalent merely to a dower or curtesy right. The regulation was based on Treasury Decision 2450.

The question soon arose as to whether the income of the community, in states where community property law was in force, was the income "of" the person who earned it, or was the income "of" the members constituting the community, and thus capable of division between such members. In reality, the problem presented two questions: (1) Was local law applicable in determining who was the person meant by the phrase "of every individual", and (2) if so, did such local law give the spouse, who had not actually earned the income, a sufficient ownership in such income that such spouse could be con-

sidered as the person meant by the phrase "of every individual"?

The department, in 1919, ruled that salaries paid one spouse could not be divided between the spouses in income tax returns, and that income from property, which was owned by husband prior to marriage, must be reported in its entirety by the husband although the wife was given a half interest therein under community property laws. Cum.Bull. No. 1, p. 189 (21-19-528). Early in 1920, this ruling was repeated and it was further held that income from community property could be divided between the spouses in income tax returns. Cum.Bull. No. 2, p. 198 (13-20-815). A later ruling in that year was that salaries in Texas, income from community property, and income from separate property, except the increase, rents and revenues from lands, could be divided between the spouses in their income tax returns. Cum.Bull. No. 3, p. 221 (39-20-1218). This ruling was based on an opinion of the Attorney General, requested August 12, 1920 by the Secretary of the Treasury, rendered September 10, 1920. 32 Atty. Gen. 298. The question as to whether local law was controlling was mentioned neither in the rulings nor the opinion mentioned.

Thereafter, the Secretary of the Treasury requested an opinion of the Attorney General regarding the right to divide community income in income tax returns, and regarding the inclusion of community property in the gross estate of a deceased spouse. On February 26, 1921, the Attorney-General rendered his opinion to the effect that in Washington, Arizona, Idaho, New Mexico, Louisiana and Nevada (in addition to Texas disposed of in the previous opinion), the husband and wife, domiciled therein and making separate income tax returns, might each report as gross income one-half of the income which under the laws of the respective States becomes, simultaneously with its receipt, community property, and that in the same states only one-half of the community property should be included in the gross estate of a deceased spouse. Cum. Bull. No. 4, p. 238 (11-21-1515). The reasoning of the opinion was that in all states mentioned, the courts therein had held that the wife had a vested interest in one-half of the community property, but that the wife, in California, did not have a vested interest but only an expectancy, and therefore the

spouses in that state could not take advantage of the community property rule. The opinion again assumed that local law controlled.

In the definition of "gross income" in the bill which became the Revenue Act of 1921, the House Ways and Means Committee included the following provision: "Income received by any community shall be included in the gross income of the spouse having the management and control of the community property." The Senate Finance Committee changed that provision to read as follows: "Income received by any marital community shall be included in the gross income of the spouse having the management and control of such community property, and shall be taxed as the income of such spouse." Seidman's Legislative History of Federal Income Tax Laws, p. 816. Both Committees reported in favor of such provision, on the ground that, since residents of states having community property law enjoyed a marked advantage over the residents of other states in that division of income reduced surtaxes, uniformity of treatment should be restored. Cum. Bulletin 1939-1, Part 2, pp. 176, 190. A Senate amendment struck the provision, and the Conference Committee adopted the Senate amendment as Amendment No. 134. Seidman's, supra, 816, 817.

As a consequence, the Revenue Act of 1921, 42 Stat. 227, merely repeated the language of the earlier acts quoted above, as did all later acts. Art. 31, Reg. 62, relating to income taxes and promulgated under the 1921 act, contained the provisions mentioned above, in accordance with the opinion of the Attorney General dated February 26, 1921. The department, later in that year ruled that the earnings of a wife in California must all be reported by the husband even though they were community property. 5 Cum. Bull., p. 199 (49-21-1964). Regulations 63 relating to estate taxes and promulgated under the 1921 act contained no provision regarding the inclusion of community property in the gross estate of a deceased spouse. Regulations promulgated under the later acts likewise lacked such a provision.

On October 24, 1921, this court held that local law was controlling in determining what interest decedent had in property at the time of his death, and that only one-half of community property in California need be included in the estate of a deceased husband. Wardell v. Blum, 9 Cir., 276 F.

226. Certiorari was denied on March 6, 1922. 258 U.S. 617, 42 S.Ct. 271, 66 L.Ed. 793. For the first time the question as to the applicability of local law was decided.

In 1922, the department ruled that community income, including the earnings of the wife and the income from her separate property, must all be reported by the husband where the parties were American citizens and domiciled in the Philippine Islands. Cum. Bull. I-1, p. 235. The ruling was placed on the ground that until dissolution of the conjugal partnership, the wife's interest in community property did not vest. The authority relied on was Madrigal v. Rafferty, Collector, 38 Phil. 414. In the same year, the same ruling was made with respect to Cuba (Cum. Bull. I-2, p. 172 (I-43-562)) and in the following year the ruling was applied to the Virgin Islands. Cum. Bull. II-2, p. 180 (II-21-1062). In the first of these rulings, Philippine law was regarded as correctly stating the law of Spain, and in addition to Madrigal v. Rafferty, Collector, supra, Nable Jose v. Nable Jose, 15 Off. Gaz. 871 (1917) and Manuel and Laxamana v. Losano, 16 Off. Gaz. 1265 (1918) were cited. The applicability of local law was assumed in these rulings.

The language of the prior acts was reenacted in the Revenue Act of 1924. Art. 31, Reg. 65, relating to income tax and promulgated under the 1924 act, was the same as Art. 31, Reg. 62. Regulations promulgated under all later acts did not contain a provision respecting the manner in which community income must be reported. Another unsuccessful assault on the result was made by the Treasury in the 1924 act. Cum. IV-1, p. 25.

On December 12, 1923, the Secretary of the Treasury requested the Attorney General to reconsider his opinion of February 26, 1921, regarding community property in California because of a change in a California statute. On March 8, 1924, the Attorney General rendered an opinion holding that Wardell v. Blum, supra, was binding and must be considered as expressing the correct rule. Accordingly the department ruled that in California community income could be divided between husband and wife in their income tax returns, and that the gross estate of a deceased spouse should include only one-half of the community property. Cum. Bull. III-1, p. 91 (III-13-1465). Pursuant thereto, Art. 31, Reg. 62 were amended on March

26, 1924. Cum. Bull. III-1, p. 84 (III-13-1463). However, on May 27, 1924, the Attorney General withdrew his opinion of March 8, 1924. Cum. Bull. III-1, p. 101 (III-23-1591).

On October 9, 1924 Attorney General (now Chief Justice) Stone rendered an opinion holding that Wardell v. Blum, supra, was binding on the government with respect to the inclusion of community property in the gross estate of a decedent spouse, but that the Treasury was free to litigate the question regarding the right of husband and wife to divide community income in their income tax returns. Cum. Bull. IV-1, p. 20. The Attorney General conceded that state law should be followed. The Commissioner, with the approval of the Secretary of the Treasury dated February 7, 1925, wrote the Collectors in part as follows:

"It is the judgment of the Treasury that public interest requires a final determination of the right of the husband and wife each to return separately one-half of the community income. In coming to this decision, the Treasury is not unmindful of the fact that in States other than California having community property laws the practice of permitting, for example, the wife to file a return for one-half of her husband's earnings and the husband to file a return for the other one-half of his earnings has been authorized by Treasury regulations. It is felt, however, that there is grave doubt of the legality of these regulations, since the husband has complete control of the community income and may dispose of it as he sees fit during his lifetime without the consent of his wife. It is obviously a somewhat strained construction to consider that the husband has received only one-half of his earnings for income tax purposes although he controls for practical purposes the whole.

"Since the surtax is graduated, the right to split the income between two people is a great advantage to the taxpayer. For example, under the present law the surtax on a net income of $100,000 is $17,020, whereas the surtax on two incomes of $50,000 each is but $7,080, a saving of nearly $10,000 of tax. It is estimated that the probable amount of taxes, with interest, which the Treasury may have to refund to California taxpayers in the event it should be finally held that the husband and wife can each separately return one-half of the community income will be over

$77,000,000. While it is thoroughly appreciated that the mere size of the refund should not control if there is no doubt it is legally due, nevertheless the amount involved shows the importance to the country of having a decision by the court of last resort on this question of law, about which there is still great uncertainty. If the court should rule in favor of the California taxpayer, he would receive back any over-payment, with interest, and would, therefore, suffer no irreparable damage. On the other hand, refund can only be made to the California taxpayer out of the taxes collected from citizens of other States, who under the laws of their particular States do not possess the valuable privilege claimed by the California taxpayers. In fairness to the country as a whole, it is the judgment of the Treasury that the taxpayers of other States should have their day in court. Only in this manner can the scales be held true between all taxpayers, whatever the State of their residence."

United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, decided January 4, 1926, resulted from the decision thus reached. It was there held that the husband in California was subject to tax on the whole of the community income. The decision was placed on two grounds: (1) that the wife's interest was a mere expectancy; (2) that if the wife had a greater interest, then Congress intended to tax the husband for the whole of the income because although he was restricted in the matter of gifts "he alone has the disposition of the fund". 269 U.S. at page 327, 46 S.Ct. at page 149, 70 L.Ed. 285. A departmental ruling to that effect followed. Cum. Bull. V-1, p. 188 (V-8-2599). Both grounds of the decision in the Robbins case were of equal validity. United States v. Title Insurance & Trust Co., 265 U.S. 472, 486, 44 S.Ct. 621, 68 L.Ed. 1110. The second ground of the decision definitely held that the spouse earning the income must pay a tax on the whole thereof, regardless of whether under the state law the other spouse owned one-half of such income, which was the equivalent of saying that local law was not controlling in determining the meaning of the phrase "net income of every individual".

On March 1, 1926, the Secretary of the Treasury requested reconsideration by the Attorney General of the latter's opinions dated March 8, 1924 and October 9, 1924, insofar as they held that only one-half of the community property should be included in the deceased husband's gross estate in California. The Attorney General on June 24, 1926, concluded that Wardell v. Blum, supra, was not consistent with United States v. Robbins, supra, and withdrew his former opinion. Based thereon, the department ruled that the entire value of community property should be included in a deceased husband's estate in California. Cum. Bull. V-2, p. 232 (V-29-2834).

On July 16, 1927, the Attorney General rendered an opinion stating that United States v. Robbins, supra, had "raised very substantial doubt as to the soundness of" his opinions of September 10, 1920 and February 26, 1921, and that because thereof he withdrew the former decisions in order to permit the arrangements for test cases, and further stating: " * * * Neither the opinions of the Attorney General upon this subject nor the rulings of the Treasury Department have been based on any interpretation of the Acts of Congress. The nature and extent of a wife's interest in community income in any of these States is to be determined from the statutes and decisions of the State." 35 Atty.Gen. 265, 266.

In 1929, the department ruled that a statute passed in 1927 in California, gave the wife such an interest in community income that she might report one-half of it.

The test cases instituted regarding the subject were decided on November 24, 1930. The first was Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, involving Washington community property. Regarding the question as to the applicability of local law, it was said: "The Commissioner concedes that the answer to the question involved in the cause must be found in the provisions of the law of the State, as to a wife's ownership of or interest in community property. What, then, is the law of Washington as to the ownership of community property and of community income including the earnings of the husband's and wife's labor?" It can be seen that this question was not actually presented or decided. Regarding the local law, after pointing out its extent, later referred to, it was held that, since in Washington the wife has a vested property right in the community property equal with that of her husband, the spouses might divide the community income in their in-

come tax returns. It was said also that the executive construction should be followed in view of the reenactment by Congress of the statute in the same words. It should be noticed, however, that the question as to the applicability of local law had never been decided in the administrative department, although the question as to what the local law was, had been.

Regarding the Robbins case, there appeared the following paragraph in Poe v. Seaborn, supra, 282 U.S. at page 116, 51 S.Ct. at page 61, 75 L.Ed. 239: "In the Robbins case, we found that the law of California, as construed by her own courts, gave the wife a mere expectancy and that the property rights of the husband during the life of the community ·were so complete that he was in fact the owner. Moreover, we there pointed out that this accorded with the executive construction of the Act as to California." No mention whatever was made of the second ground of the decision in the Robbins case, undoubtedly because the Commissioner's concession made discussion thereof unnecessary. Certainly such a record gives no support to the theory that Poe v. Seaborn, supra, overruled the second ground of decision in the Robbins case.

That decision was followed with respect to Arizona in· Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247, with respect to Texas in Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249, and with respect to Louisiana in Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252.[1] In none of these cases was the question as to the applicability of local law mentioned. On January 19, 1931, the rule was extended to California because of the amendment of its statutes in a per curiam opinion which merely cited the first three of the test cases mentioned above. United· States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714.[2]

It was not until about two years later that the rule that "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law," was specifically announced. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199. That rule was thereafter repeated in Palmer v. Bender, 287 U.S. 551, 555, 53 S.Ct. 225, 77 L.Ed. 489, and Thomas v. Perkins, Commissioner, 301 U.S. 655, 659, 57 S.Ct. 911, 81 L.Ed. 1324.

On June 21, 1937, this court held that local law was not applicable in determining the value of the net estate of a decedent in California. Bank of America Nat. T. & Sav. Ass'n v. Com'r .of Internal Revenue, 9 Cir.,. 90 F.2d 981, 983. Following this case, the rule quoted above from Bur.net v. Harmel, supra, was again repeated. Biddle v. Commissioner, 302 U.S. 573, 578, 58 S.Ct. 379, 82 L.Ed. 431.

On May 16, 1938, the statement made by this court in Bank of· America Nat. T. & Sav. Ass'n v. Com'r Of Internal Revenue, 9 Cir., supra, was mentioned in Lang v. Commissioner, 304 U.S. 264, 267, 58 S.Ct. 880, 882, 82 L.Ed. 1331, 118 A.L.R. 319, as follows: "This statement is not accurate and conflicts with what we have said. Poe v. Seaborn, 282 U.S. 101, 111, 112, 51 S.Ct. 58, 59, 75 L.Ed. 239; Blair v. Commissioner, 300 U.S. 5, 9, 10, 57 S.Ct. 330, 331, 332, 81 L.Ed. 465." It should be noted that both cases cited involved "income" taxes, and that the first did not hold local law to be applicable on any question. In another opinion announced the same day, the rule in Burnet v. Harmel, supra, was again repeated (Heiner v. Mellon, 304 U.S. 271, 279, 58 S.Ct. 926, 82 L.Ed. 1337), and it has since been repeated in Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, and United States v. Pelzer, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913.

A further assault was made against the result of the rule regarding community income in hearings held with respect to the 1937 act.· Seidman's Legislative History of Federal Income Tax Laws, p. 817. Estimates submitted therein were that the loss to the government resulting from the division of community income has been from $9,000,000 to $60,000,000 annually. See Black v. Commissioner of Internal Revenue, 9 Cir., 114 F.2d 355, 360. In 1938 a ruling was made regarding paraphernal property in the Philippine Islands, which need not be discussed here. Cum. Bull. 1938-1, p. 160 (1938-12-9245).

From this general history four conclusions may be drawn: (1) That the Su-

---

[1] Departmental rulings followed these cases. Cum.Bull. IX-2, p. 199 (IX-51-4871), p. 200 (IX-51-4872), p. 201 (IX-51-4873), and p. 202 (IX-51-4874).

[2] That case was applied in 1931 in a departmental ruling.· Cum.Bull. X-1, p. 140 (X-9-4955).

preme Court has never decided that local law is applicable in determining whether community income may be divided between the spouses in their income tax returns; (2) that on the contrary, the Supreme Court expressly decided in United States v. Robbins, supra, that such law was not applicable on that question and the rule announced in Burnet v. Harmel, supra, supports that view; (3) that the Supreme Court has expressly decided that local law is applicable in determining the amount of the net estate of a decedent in Lang v. Commissioner, supra; and (4) that the latter decision may be subject to a connate defect in view of the authorities relied upon in it, and because of the rule of Burnet v. Harmel, supra.

Since Lang v. Commissioner, supra, is binding here, the problem is whether the wife's interest in community property is merely an expectancy, as in United States v. Robbins, supra, or whether the wife had a present and equal, vested interest in community property, as in Poe v. Seaborn, supra, under the law of the Philippines.

It was said in Poe v. Seaborn, supra, 282 U.S. at page 110, 51 S.Ct. at page 59, 75 L.Ed. 239: "While the husband has the management and control of community personal property and like power of disposition thereof as of his separate personal property, this power is subject to restrictions which are inconsistent with denial of the wife's interest as co-owner." Some things are mentioned therein to show the restrictions which I will call reasons.

One reason was that upon the death of either spouse, his or her interest is subject to testamentary disposition by such spouse, and if it is not so disposed of, then it passed to the issue of decedent and not to the surviving spouse. The law of Spain was the same (Robbins, Community Property Laws, pp. 17, 246;[3] McKay, Community Property, 920; (1427, pp. 984, 985) as is the law of the Philippines. Civ.Code, Art. 63, 662; Code of Civ.Proc., § 614; Coronel v. Ona, 33 Phil. 456, 469.

Another reason given was that the wife may borrow for community purposes and bind the community property. The rule seems to have been the same in Spain. Robbins, supra, pp. 82, 86; compare McKay, supra, 997. In the Philippines, Civ. Code, Art. 1416, provides that the "wife may not bind the property of the conjugal partnership without the consent of the husband" but an exception is made where the wife is the administrator of the conjugal partnership. See Art. 1441, 1442. Art. 1408 provides that the conjugal partnership shall be liable for debts and obligations contracted during the marriage "by the wife in the cases in which she can legally bind the partnership".

Another reason given was that the husband could not discharge a separate debt out of community property and the wife could enjoin him from doing so. In Spain and in the Philippines the rule was the same except the provision for injunction. Whether that remedy existed is not clear. Robbins, supra, p. 84, 86, 192; Civ.Code, Art. 1386; Tabotabo v. Molero, 22 Phil. 418, 422, 423.

Another reason given was that the wife could prevent the husband from making substantial gifts out of community property without her consent. The husband's right to make gifts was the same in Spain (Robbins, supra, pp. 97, 98, 240) and is the same in the Philippines. Civ.Code, Art. 1415. What remedy the wife has is not clear. Baello v. Villanueva and Villanueva, 54 Phil. 213, 214.

Another reason given was that community property is not liable for the husband's torts not committed in carrying on the business of the community. The law of Spain was the same (Robbins, p. 86, p. 129, p. 198) and probably also in the Philippines, although no authority to that effect has come to our attention.

Another reason is that if the husband acts in fraud of the wife's rights, she has her remedy in the courts. While in Spain, the law was that such acts of a husband did not bind the wife (Robbins, p. 103) the wife's remedy is not clear. In the Philippines, injunction can be granted in

---

[3] Spain was among the first of the European nations which reduced her law to codes. Robbins, Community Property Laws, p. 7, Book V, Title IX of the Nueva Recopilacion (1567) contains the laws concerning Bienes ganaciales (Community Property). Commentaries on these laws were written by Matienzo (1597), Azevedo (1597) and Gutierrez (1606) who were celebrated Spanish Jurists. Robbins, supra. The translation of these commentaries by Robert Warden Lee, of All-Souls, Oxford, is contained in Robbins, Community Property Laws.

some circumstances. De La Vina v. Villareal and Geopana, 41 Phil. 13, 22, 23.

Finally, another reason given was that under some circumstances, the wife might recover her portion of the community property prior to dissolution of the marriage. The right exists in the Philippines, although it may be less liberal. Civ.Code, Art. 1433.

In addition to these reasons the Supreme Court, in the test cases previously mentioned, relied on the general expressions of the state courts as to the nature of the wife's interest. In Spain, the ownership and possession of property acquired during marriage passed automatically to the wife (Robbins, supra, p. 64) but constructively only. The actual, true and real ownership and community of possession vested only on dissolution of the marriage. Robbins, supra, p. 223.

Before discussing specific Philippine cases, I think it necessary to say generally, that the community is considered as something separate and apart from the members thereof, something in the nature of entity, although it is not in fact a legal entity. It is a sort of fictitious personality. Appellee concedes that fact. Appellee says: "Neither the husband nor the wife has a present vested interest or distinct separate title to any of the property so long as the conjugal partnership exists", and further that title of either the husband or the wife "does not vest until dissolution of the community". The rights of each spouse seem to be best explained by the statement, that during marriage, each spouse has a present vested and equal right to become the owner of, or obtain the title to, one-half of the property belonging to the community. These statements, of course apply to the rights as between the parties themselves, but may not apply as between the parties and third persons.

In Nable Jose v. Nable Jose, 41 Phil. 713, decided December 11, 1916, the husband mortgaged the community property after death of the wife. The wife's heirs contested the validity of the mortgage as to the wife's interest. In view of the fact that the majority make only an abbreviated reference to the case, and the intimation in the majority opinion that the Philippine court did not mean what it said in the quotation hereafter made, a more detailed discussion of that case follows.

One theory by which the mortgage could be upheld was that the community still existed after the wife's death, between the husband and the wife's heirs, and therefore the husband, as manager of the community, had the same right to dispose of community property after as well as before the wife's death. The court held, however, that the community was dissolved by the death of the wife.

A theory that the mortgage was invalid as to the wife's interest was that the wife's interest vested either upon acquisition of the property or upon her death, and therefore the husband could not mortgage something which did not belong to him. The court said (41 Phil. at page 721): " * * * it may fairly be deduced that prior to the liquidation, the interest of the wife, and in case of her death, of her heirs, is an interest inchoate, a mere expectancy, which constitutes neither a legal nor an equitable estate, and does not ripen into title until it appears that there are assets in the community as a result of the liquidation and settlement". While the majority apparently think the Philippine court did not mean what it said in that quotation, the latter court said in Manuel and Laxamana v. Losano, 41 Phil. 855, 860, that the quotation was a holding and said in Madrigal and Paterno v. Rafferty and Concepcion, 38 Phil. 414, 420, that it was a decision.

In the Nable Jose case, the court further held that the husband, as administrator of the community had power to mortgage and give good title to the community property in the liquidation thereof, after death of the wife. The same rule was applied in the same situation except that a deed was involved, instead of a mortgage, in Manuel and Laxamana v. Losano, supra, decided July 2, 1918.

On August 7, 1918, it was held that community income could not be divided between the spouses in their income tax returns under the Revenue Act of 1913, 38 Stat. 166 et seq. The reasoning of the court was that the wife had no absolute right to one-half the income of the conjugal partnership, and that since she had no estate and income, actually and legally vested in her and entirely distinct from her husband's property, the income could not properly be considered the separate income of the wife. Madrigal and Paterno v. Rafferty and Concepcion, 38 Phil. 414, 420.

The majority say that the Madrigal case "was decided in advance of the holding of the United States Supreme Court in Poe v. Seaborn". If that fact has any significance, it is equally significant that the Madrigal case was also decided prior to the decision of United States v. Robbins, supra.

However, I believe appellant's theory of the Madrigal case is erroneous. I do not believe that such case held that the husband "owned" the entire community income. I think it was decided on the theory that the income was the income of one thing, i. e. the community, but that since the community as such could not be taxed, the tax was laid on the representative of that community, i. e. the husband.

Gibbs v. Government of the Philippine Islands, 59 Phil. 293 was decided December 23, 1933. The majority rely heavily on the case. There, a husband and wife held real property as community property. After the death of the wife, the Philippine trial court decreed the real property mentioned to be the absolute property of the husband without administration. The question in the Supreme Court of the Philippine Islands, was whether there was a "transmission" of real property to the husband within a statute which levied a tax on every "transmission by virtue of inheritance * * * of real property". The court held that "the wife * * * was, by the law of the Philippine Islands, vested of a descendible interest, equal to that of her husband, in the Philippine lands * * * from the date of their acquisition to the date of her death". In addition, the court said (59 Phil. at pages 301, 302): "* * * the wife, upon the acquisition of any conjugal property, becomes immediately vested with an interest and title therein equal to that of her husband subject to the power of management and disposition which the law vests in the husband. Immediately upon her death, if there are no obligations of the decedent, as is true in the present case, her share in the conjugal property is transmitted to her heirs by succession".

I think that instead of being a "clear-cut holding" for the view of the majority, the Gibbs case gives such view no support. All the case holds is that upon acquisition of community property, the interest therein of both husband and wife is a present equal and vested interest and that such interest,

whatever it might be, was capable of "transmission". It did not purport to define the interest because it was unnecessary to do so. The prior cases had defined the interest as being a right to receive the title to or ownership of, the property. The right was not ownership because ownership was in the community. Such interest, as was previously held, could not ripen into title or ownership until liquidation of the community property.

That such analysis of the Gibbs case is correct is shown by the subsequent case of Oñas v. Javillo, 59 Phil. 733, decided March 20, 1934. In that case a wife of a husband died after acquisition by the community of real property. Before liquidation of the community property of the first marriage, and after a second marriage and the acquisition of real property by that community the husband died. The trial court approved a "project of partition" apparently on the theory that since the first wife's title did not vest until liquidation of the community property, the husband's heirs were entitled to the whole of the property of the first community. The Supreme Court of the Philippine Islands quoted the rule of the Nable Jose case to show that the husband did not own the whole of the community property of the first marriage, but that the community (the first conjugal partnership) did. The first wife's right was not one of ownership but a right to become an owner. Since that right passed to the heirs of the wife upon her death, the husband obviously did not have such right to pass to his heirs. For that reason the court said the project of partition was not in accordance with law, and that the property was to be partitioned as follows: one-half of the property of both communities was to go to the husband's heirs; one-half of the property of the first community was to go to the first wife's heirs; and one-half of the property of the second community was to go to the second wife.

The statement of the majority that Oñas v. Javillo, supra, supports the view expressed in the majority opinion arises from the confusion of treating the wife's interest (that is the right to become an owner of community property) as ownership directly of the property—something which even appellee concedes is erroneous. The majority state that Oñas v. Javillo, supra, did not mention the Gibbs decision ap-

parently attaching some significance to that fact. It seems perfectly clear why the Gibbs case was not mentioned. As previously stated, the Gibbs case made no attempt to define either spouse's interest in the community property, and it was, therefore, not in point when it became necessary to do so in Oñas v. Javillo, supra.

In discussing the latter case, the majority erroneously says that "the court decided that the heirs of the wife could maintain an action for partition of community real estate after the death of the wife, notwithstanding there had been no liquidation". There are two errors in this statement. First, what the Supreme Court of the Philippine Islands considered was the "correctness" of a partition. The other error is that a "partition" is itself a "liquidation" of the community property. Cruz v. De Jesus, 52 Phil. 870, 872 (decided March 2, 1929) and Caragay v. Urquiza, 53 Phil. 72, 77 (decided March 25, 1929).

Respondent further contends that an amendment of Code of Civ.Proc., § 685 in 1924 changed the pre-existing rule. Prior to that amendment, the provision required only one-half of the community property to be inventoried and accounted for upon the death of a spouse. After amendment the provision required the whole of the community property to be inventoried, administered and liquidated, upon the death of a spouse, and made provision regarding sales of such property. Whatever may be said for this amendment, it is apparent that it did not change the pre-existing rule in view of the opinion in Onas v. Javillo, supra, decided ten years after the amendment. Furthermore, its obvious purpose was to protect the wife's heirs because of Nable Jose v. Nable Jose, supra.

In the instant case, upon liquidation of the community property, the wife succeeded to the title to one-half thereof belonging to her husband. She also then acquired her title to the other half—something which prior to liquidation was vested in the community. "Thus the death of one of the parties * * * became the 'generating source' of important and definite accessions to the property rights of the other". Tyler v. United States, 281 U.S. 497, 504, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758. As in that case, the tax here should have been laid on the whole estate. The decision should be reversed.